638 So.2d 87 (1994)
GAZEBO LANDSCAPE DESIGN, INC., Appellant,
v.
BILL FREE CUSTOM HOMES, INC., a Florida Corporation, Sheldon E. Stunkel and Sally Stunkel, Appellees.
No. 92-3274.
District Court of Appeal of Florida, Fourth District.
April 27, 1994.
Clarification Denied July 7, 1994.
*88 Robert E. Ferencik, Jr., Leiby Ferencik Libanoff and Brandt, P.A., Miami, for appellant.
Christopher L. Kurzner and Steven E. Stark, Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., Miami, for appellees.
POLEN, Judge.
Appellant, Gazebo Landscape Design, Inc., sought to enforce a mechanic's lien against the appellee homeowners, Bill and Sally Stunkel (the Stunkels), for landscape work done, including the planting of hand selected trees. The trial court refused to enforce the mechanic's lien, and entered judgment in favor of the Stunkels on the grounds that Gazebo did not serve them with a notice to owner within forty-five days after commencing to furnish service or materials, as required by section 713.06(2)(a), Florida Statutes (1991).[1] We reverse.
The Stunkels entered into a contract for the construction of a residence on their property with Bill Free Custom Homes, a general contractor. Bill Free then entered into an oral contract with Gazebo, a landscaping subcontractor, for Gazebo to obtain and plant trees, which were to be hand selected by the Stunkels. On November 7, 1990, one of Gazebo's representatives flew to Sarasota with the Stunkels, on the Stunkels' private jet, where they met with a tree collector, Turner Tree and Landscape. The Stunkels selected several trees, and physically tagged them to ensure that these would be the exact trees delivered to their premises and planted by Gazebo. On December 5, 1990, several of Gazebo's employees went to the Stunkel residence to dig holes in preparation for the arrival of the trees. On December 7, 1990, the trees arrived from Turner Tree and Landscape and were planted by Gazebo. On January 15, 1991, Gazebo sent a notice to the Stunkels at their residence, via certified mail, which was returned unclaimed. On January 18, 1991, Gazebo had a notice to owner hand posted on the gate of the Stunkel's residence.
On February 11, 1992, Gazebo filed a complaint for breach of contract and to foreclose its claim of lien, naming both Bill Free and the Stunkels. The action against Bill Free was stayed in bankruptcy. On September 17, 1992, the Stunkels and Gazebo proceeded to trial. At the close of Gazebo's case, the trial court entered an involuntary dismissal against Gazebo's claim of lien.
We hold that the trial court erred in granting the motion for involuntary dismissal and entering a final judgment in the Stunkels' favor. We base this holding on the lack of legal authority in Florida to support the trial court's conclusion that Gazebo began furnishing services to the Stunkels in November 1990, when a representative of Gazebo went with the Stunkels to select the trees. The only authority referred to by the Stunkels, and relied upon by the lower court, was Arlington Lumber & Trim Co., Inc. v. Vaughn, 548 So.2d 727 (Fla. 1st DCA 1989), which is distinguishable from the instant appeal. In Arlington, the first district held that the time during which a materialman was required to serve a notice to owner began to run when the contractor made an *89 over the counter purchase of materials for a job, as this was when the materialman began to furnish his materials. Id. at 729. Conversely, at bar, even though Gazebo might have given Turner Tree and Landscape a deposit for the trees, there were no affirmative acts taken by Gazebo which establish that Gazebo actually began to furnish materials, the trees, to the Stunkels. It should be further noted that Arlington refers only to the furnishing of materials, and gives no guidance as to when a materialman, contractor, subcontractor, or any other might begin to furnish services.
We also acknowledge that there is no legal authority in Florida specifically concluding that a contractor does not begin to furnish services until its employees actually begin work at the job site. However, in considering the motion for involuntary dismissal at bar, the trial court should have taken all the facts and evidence presented and evaluated them in the light most favorable to Gazebo. Charlotte Asphalt, Inc. v. Cape Cave Corporation, 406 So.2d 1234 (Fla. 2d DCA 1981). If any reasonable interpretation supported Gazebo's claim, the Stunkels' motion should have been denied. The lower court heard testimony from Gazebo's representative that no deal was sold until "the job (was) in the ground and I got the check." In addition, Gazebo's representative testified that the deposit for the trees was refundable. This representative further testified that the trip to Sarasota was a "sales thing," and if "the guy liked the trees we sold the deal." However, he also stated that, "If Mr. Stunkel walked out there and said, `these trees are no good,' I would have left and he would have probably hired someone else." Since these facts and this testimony can be reasonably interpreted to support Gazebo's claim that it did not furnish services or materials until December 5, 1990, when they began to dig holes at the Stunkel residence, we hold that the trial court erred in granting the Stunkels' motion for involuntary dismissal.
However, we do not hold as a matter of law that a contractor does not begin to furnish services until work is actually performed at the job site. Rather, in determining when the furnishing of services begins, we suggest that the trial court look at all of the circumstances surrounding the particular job or transaction. It might be particularly useful to determine whether the contractor had actually suffered any economic detriment, or whether he simply engaged in certain activities on a gratuitous basis, in hopes of "landing" a job. This practical analysis, based on the totality of the circumstances, might eliminate any possible confusion and uncertainty in the construction industry as to when services are actually furnished, and when notice should be given in accordance with section 713.06(2)(a), Florida Statutes (1991), so a mechanic's lien can be legally enforced.
Thus, we reverse and remand for proceedings consistent with this opinion. Nonetheless, we certify to the supreme court the following question as one of great public importance:
DOES A SUBCONTRACTOR BEGIN TO FURNISH SERVICES, FOR THE PURPOSE OF TIMELY PROVIDING A NOTICE TO OWNER IN ACCORDANCE WITH SECTION 713.06(2)(a), FLORIDA STATUTES (1991), WHEN, WITHOUT ANY BINDING CONTRACTUAL OBLIGATION TO DO SO, HE OR SHE BEGINS TO SELECT MATERIALS AT SOME LOCATION OFF THE JOB SITE, FOR FUTURE INSTALLATION ON THE JOB SITE?
ANSTEAD and STONE, JJ., concur.
NOTES
[1] All lienors under this section, except laborers, as a prerequisite to perfecting a lien under this chapter, and recording a claim of lien, must serve a notice on the owner.... The notice must be served before commencing, or not later than 45 days after commencing to furnish his services or materials... . § 713.06(2)(a), Fla. Stat. (1991).