660 So.2d 623 (1995)
Sheldon E. STUNKEL, et al., Petitioner,
v.
GAZEBO LANDSCAPING DESIGN, INC., Respondent.
No. 84075.
Supreme Court of Florida.
May 11, 1995.
Rehearing Denied September 21, 1995.
Steven E. Stark and William R. Clayton, Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., Miami, for petitioner.
*624 Robert E. Ferencik, Jr., and David H. Brodie, Leiby, Ferencik, Libanoff and Brandt, P.A., Fort Lauderdale, for respondent.
HARDING, Justice.
We have for review a district court decision certifying the following question to be of great public importance:
DOES A SUBCONTRACTOR BEGIN TO FURNISH SERVICES, FOR THE PURPOSE OF TIMELY PROVIDING A NOTICE TO OWNER IN ACCORDANCE WITH SECTION 713.06(2)(a), FLORIDA STATUTES (1991), WHEN, WITHOUT ANY BINDING CONTRACTUAL OBLIGATION TO DO SO, HE OR SHE BEGINS TO SELECT MATERIALS AT SOME LOCATION OFF THE JOB SITE, FOR FUTURE INSTALLATION ON THE JOB SITE?
Gazebo Landscape Design, Inc. v. Bill Free Custom Homes, Inc., 638 So.2d 87 (Fla. 4th DCA 1994). We have jurisdiction based on article V, section 3(b)(4) of the Florida Constitution.
We answer the certified question in the negative because a binding contract is necessary to file a mechanic's lien. We also hold that the forty-five-day period for giving notice to the owner of a possible lien claim under section 713.06, Florida Statutes (1991), starts when a subcontractor begins to furnish services or materials at the job site.

I. FACTS
Sheldon and Sally Stunkel contracted with Bill Free Custom Homes, a general contractor, for the construction of a home on their property. The contractor then orally contracted with Gazebo Landscaping Design, Inc., a landscaping subcontractor, to plant trees selected by the Stunkels. On November 7, 1990, the Stunkels flew with a Gazebo representative on the Stunkels' private plane to inspect trees at Turner Tree and Landscape near Tampa. The Stunkels selected and tagged several trees for Gazebo to deliver and plant. On December 5, 1990, Gazebo workers dug holes on the Stunkels' property in preparation for planting the trees. Two days later, on December 7, Gazebo planted the trees sent from Turner Tree and Landscape.
Gazebo tried unsuccessfully to notify the Stunkels on January 15, 1991, of an impending claim of lien. On January 18, 1991, Gazebo posted a notice to owner on the gate of the Stunkel residence. Section 713.06(2)(a) requires a notice to owner to be posted within forty-five days after a subcontractor begins to furnish services or materials.[1] Thus, the time of commencement  either when the Stunkels traveled with Gazebo representatives on their plane to select trees or when Gazebo actually began work at the Stunkels' residence  is critical to whether Gazebo timely posted its notice to owner.
Gazebo filed suit on February 11, 1992, against the Stunkels and the contractor for breach of contract and to foreclose its claim of lien. A bankruptcy proceeding stayed the claim against the contractor. Trial began on September 17, 1992, with the Stunkels as sole defendant. After Gazebo presented its case, the trial court entered an involuntary dismissal against Gazebo's claim of lien after finding that Gazebo did not serve the Stunkels with a notice to owner within forty-five days after commencing to furnish services or materials, as required by section 713.06(2)(a). Because of the involuntary dismissal at the close of Gazebo's case, the Stunkels did not present any evidence.
Gazebo appealed, and the Fourth District Court of Appeal reversed the trial court's *625 ruling. The district court noted that there was no authority either to support the trial court's conclusion that Gazebo began furnishing services to the Stunkels when a representative went with the Stunkels to select trees or for concluding that a contractor does not begin to furnish services until its employees actually begin to work at the job site. Gazebo, 638 So.2d at 89. The court distinguished Arlington Lumber & Trim Co. v. Vaughn, 548 So.2d 727 (Fla. 1st DCA 1989), which held that the time for a material supplier to notify an owner about a possible lien begins to run when the contractor purchases materials over-the-counter. Gazebo, 638 So.2d at 88-89. The district court reasoned that Arlington dealt with the provision of materials by a material supplier and this case concerns the provision of services by a subcontractor. Id.
The district court reversed the circuit court's entry of an involuntary dismissal, stating that there were triable issues when the court considered the facts in the light most favorable to Gazebo, the nonmoving party. Id. at 89. The district court specifically did not hold that a contractor begins to furnish services when work is performed at the job site. Id. Instead, the court suggested that the trial court consider all of the relevant factors "based on the totality of the circumstances" in determining when the subcontractor actually began to provide services. Id.

II. CERTIFIED QUESTION
The question certified to this Court asks whether subcontractors begin to furnish services when they first select materials off the job site even though there is no binding contractual obligation to do so. A contract is essential to a mechanic's lien. See Viking Communities Corp. v. Peeler Constr. Co., 367 So.2d 737, 739 (Fla. 4th DCA 1979); § 713.06(1), Fla. Stat. (1991) ("[A] subcontractor ... has a lien on the real property improved for any money that is owed to him for labor, services, or materials furnished in accordance with his contract." (emphasis added)). Without a contractual obligation, a subcontractor cannot bring a claim of lien against the owner. Thus, we answer the certified question in the negative.
We also take this opportunity to clarify that a subcontractor begins to furnish services or materials for the purpose of giving notice to the owner under section 713.06(2)(a) when the services or materials are delivered to the job site.[2] We reject the district court's suggestion of a "totality of the circumstances" test, see Gazebo, 638 So.2d at 89, because that test would not provide certainty about when the forty-five-day period begins to run.
In reaching this conclusion, we are guided by principles of statutory construction. Mechanic's lien law is a creature of statute and must be strictly construed. Aetna Casualty and Sur. Co. v. Buck, 594 So.2d 280, 281 (Fla. 1992). Section 713.01 defines both "commencement of the improvement" and "improvement."[3] When read together, these two definitions suggest that the legislature intended commencement to begin when services or materials are furnished at the job *626 site because the statute allows liens only for services or materials that improve specific real property.
In addition, we note that mechanic's lien law serves at least two purposes. First, mechanic's liens protect suppliers who furnish labor or materials to the property by assuring them of full payment. Prosperi v. Code, Inc., 626 So.2d 1360, 1362 (Fla. 1993) (citing Emery v. International Glass & Mfg., Inc., 249 So.2d 496, 500 (Fla. 2d DCA 1971)). Mechanic's lien law also protects owners by requiring subcontractors to provide notice of possible liens, thereby allowing owners to prevent double payment to both a contractor and subcontractor, material supplier, or laborer, for provision of the same services or materials when the contractor and subcontractor are not in privity. Aetna, 594 So.2d at 281.
Contracting parties need certainty about when time periods for notification begin. If we adopted the district court's suggestion of a totality of the circumstances test, giving notice to owner would be determined on a case-by-case basis, and subcontractors would never know for sure when they had to give notice. However, if the time of commencement begins when the services or materials are delivered at the job site, subcontractors will know exactly when the time period begins for giving notice to owner. Furthermore, owners will more likely receive notice of possible lien filings in time to avoid double payment in most cases.
In addition, most courts that have dealt with this issue have held that the time of commencement began when the services or materials were delivered to the job site. See Rite-Way Painting & Plastering v. Tetor, 582 So.2d 15, 17 (Fla. 2d DCA) (forty-five-day period ran from the day the services and materials were delivered to the job site), review dismissed, 587 So.2d 1329 (Fla. 1991); Essex Crane Rental Corp. v. Millman Constr. Co., 516 So.2d 1130, 1131 (Fla. 3d DCA 1987) (forty-five-day period ran from when unassembled parts were furnished to a job site, not when the parts were assembled into a working crane several months later), review denied, 525 So.2d 878 (Fla. 1988); Daly Aluminum Prods., Inc. v. Stockslager, 244 So.2d 528, 529 (Fla. 2d DCA 1970) (counting forty-five-day period from the day improvements began at the site), cert. denied, 246 So.2d 97 (Fla. 1971); see also 1 Stephen Rakusin, Florida Construction Lien Manual, Ch. 8.04F.1.b.(1) (1994) ("[T]he general rule is that the time period is computed from the first day on which the claimant delivers material or labors on the job.").
The Arlington decision, which the district court distinguished from the instant case, creates an exception to the delivery at the job site test for materials sold over the counter. We find, however, that material suppliers who sell materials over the counter should also measure the forty-five-day period as running from when the materials are actually delivered at the job site. This ensures that those materials were used on that particular job, thereby protecting the owner, and allows the material supplier to rely on the same time period as in all other cases, except for specially fabricated materials. Therefore, we disapprove Arlington to the extent that it conflicts with this decision.

III. CLAIM OF LIEN DEFICIENCY
The Stunkels argue that the claim is invalid. The trial court refused to enforce the claim of lien after finding that Gazebo's president had not taken an oath when he signed the claim. In addition, the president signed the claim on January 14, 1991, even though the claim included a statement that the lien was hand-posted on January 18, 1991.
Section 713.08(3) requires that a claim of lien include an attestation by a notary. Section 713.08(4)(a), states:
The omission of any of the foregoing details or errors in such claim of lien shall not, within the discretion of the trial court, prevent the enforcement of such lien as against one who has not been adversely affected by such omission or error.
The question is therefore whether the faulty claim of lien adversely affects the Stunkels.
*627 Courts have required inquiry into the adverse effects from faulty claim forms with immaterial errors such as the lack of specific labor, services, or materials provided;[4] specific amount of money outstanding;[5] and correct description of the property.[6] Thus, if the trial court determines on remand that the notice to owner was timely, the trial court must determine whether, by a preponderance of the evidence, the faulty claim of lien adversely affected the Stunkels. See Mid-State Contractors, Inc. v. Halo Dev. Corp., 342 So.2d 1078, 1080 (Fla. 2d DCA 1977).

IV. ATTORNEY'S FEES
Both parties have moved for attorney's fees based on section 713.29, Florida Statutes (1991), which allows a prevailing party in an action to enforce a construction lien to recover reasonable attorney's fees for trial and appeal. No attorney's fees can be awarded until the trial court determines a prevailing party in the underlying action in accordance with our remand and any subsequent appeal is decided.

V. CONCLUSION
Accordingly, we answer the certified question in the negative and hold that the forty-five-day period for notice under section 713.06(2)(a) begins when the services or materials are furnished at the job site. We approve the result of the decision below only to the extent that it reverses the trial court's involuntary dismissal of Gazebo's action to enforce the mechanic's lien. We disapprove Arlington to the extent that it is inconsistent with this opinion. In addition, we remand for proceedings consistent with this opinion.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN and WELLS, JJ., concur.
ANSTEAD, J., recused.
NOTES
[1] Section 713.06(2)(a), Florida Statutes (1991), provides in relevant part:

All lienors under this section, except laborers, as a prerequisite to perfecting a lien under this chapter and recording a claim of lien, must serve a notice on the owner setting forth the lienor's name and address, a description sufficient for identification of the real property, and the nature of the services or materials furnished or to be furnished... . The notice must be served before commencing, or not later than 45 days after commencing, to furnish his services or materials, but, in any event, before the date of the owner's disbursement of the final payment after the contractor has furnished the affidavit under subparagraph (3)(d)1... . [T]he failure to serve the notice, or to timely serve it, is a complete defense to enforcement of a lien by any person.
[2] One exception to this rule is for specially fabricated materials. Oolite Indus., Inc. v. Millman Constr. Co., 501 So.2d 655, 656 (Fla. 3d DCA), review denied, 509 So.2d 1118 (Fla. 1987). Specially fabricated materials are defined as being not generally suited for or readily adaptable to use in a like improvement. Surf Properties, Inc. v. Markowitz Bros., Inc., 75 So.2d 298, 302 (Fla. 1954); Lehigh Structural Steel Co. v. Joseph Langner, Inc., 43 So.2d 335, 338 (Fla. 1949). In Lehigh, this Court held that steel specifically made for a particular building was specially fabricated material. Id., at 338. In Oolite, the court held that a material supplier must deliver a notice to owner within forty-five days of starting to manufacture specially fabricated materials. The court reasoned that because the materials were only for use in a particular project, "no actual delivery of the materials to the job site is required." Oolite, 501 So.2d at 656. The trees selected by the Stunkels were not specially fabricated because they could be used in other projects.
[3] Sections 713.01(3) and (11), Florida Statutes (1991), provide:

(3) "Commencement of the improvement" means the time of filing for record of the notice of commencement provided in s. 713.13.
(11) "Improvement" means any building, structure, construction, demolition, excavation, landscaping, or any part thereof existing, built, erected, placed, made, or done on land or other real property for its permanent benefit.
[4] See Blinn v. Dumas, 408 So.2d 683, 684 (Fla. 1st DCA 1982) (holding that claim of lien without specific details of what labor, services, or materials were provided did not have per se adverse affects on lienee).
[5] See Mid-State Contractors, Inc. v. Halo Dev. Corp., 342 So.2d 1078, 1080-81 (Fla. 2d DCA 1977) (holding that a claim of lien could be enforced without stating the specific amount owed and remanding to the trial court to determine if the lienee was adversely affected by the omission).
[6] See Johnson & Bailey Architects, P.C. v. Southeast Brake Corp., 517 So.2d 776, 778 (Fla. 2d DCA 1988) (holding that an architectural firm could amend claim of lien to include appropriate property description and that lien would be enforceable absent showing of adverse affect on the lienee).