AMERICAN RURAL CELLULAR,
INC., a Delaware corporation,
Plaintiff and Appellant,

v.

SYSTEMS COMMUNICATION CORPO-
RATION, a Utah corporation; and Neal
M. Sorensen, an individual, Defendants
and Appellees.

No. 960335–CA.

Court of Appeals of Utah.

May 30, 1997.

Andrew W. Morse and Julianne P. Blanch, Snow, Christensen & Martineau, Salt Lake City, for Plaintiff and Appellant.

Gayle F. McKeachnie and Clark B. Allred, McKeachnie & Allred, P.C., Vernal, for Defendants and Appellees.

Before WILKINS, Associate Presiding Judge, and BENCH and JACKSON, JJ.

## OPINION

JACKSON, Judge:

American Rural Cellular, Inc. (Cellcom) appeals the trial court's judgment, on remand, in favor of Systems Communication Corporation (Syscom). We affirm in part, reverse in part, and remand for further proceedings on the issue of attorney fees.

## FACTS

In 1989, Cellcom, a Delaware corporation, was awarded Federal Communications Commission permits to build and operate cellular telephone systems in eastern Utah and central Pennsylvania. After obtaining the permits, Cellcom entered into an agreement with Syscom, a Utah corporation, for the construction and management of a cellular telephone system in eastern Utah.[1] As the first phase of construction on the cellular system neared completion, a dispute arose between the parties. Cellcom questioned Syscom's compliance with certain terms of the parties' contract; Syscom responded by filing mechanics' liens on the three Cellcom properties that Syscom had improved. Cellcom then took the cellular system over from Syscom and filed this action seeking to terminate the contract and void the mechanics' liens. Syscom counterclaimed, seeking foreclosure of its mechanics' liens and damages for breach of contract. In its response to Syscom's counterclaim, Cellcom argued that Syscom was barred from bringing its counterclaim by Utah Code Ann. § 58-55-604 (1996),[2] which prohibits unlicensed contractors from suing on their contracts. Cellcom asserted that because Syscom acted as a contractor and failed to comply with the licensing requirements of the Utah Construction Trades Licensing Act (the Act), Utah Code Ann. tit. 58, ch. 55, Syscom could not recover for materials and services provided under the contract.

After a two-day bench trial in October 1992, the trial court held that Cellcom had validly terminated the contract, but that Cellcom had breached the contract by not paying Syscom the amount it spent to build the cellular system. The trial court further held that Syscom was not barred by section 58-55-604 from maintaining its action, and that the mechanics' liens were valid. The court awarded Syscom its attorney fees and a judgment for $116,040.96.

Cellcom appealed the trial court's ruling to this court. In our 1995 opinion, see *American Rural Cellular, Inc. v. Systems Communication Corp.*, 890 P.2d 1035 (Utah.Ct.App. 1995), we concluded that the trial court failed to make adequate findings to support its

---

1. The parties entered into two written contracts: (1) the "Management Agreement," which set forth the terms of the management, construction, and operation of the cellular system, and which is the contract primarily at issue in this case, and (2) a "Sales Agent Agreement," which provided that Syscom would obtain subscribers to Cellcom's cellular service and sell cellular telephone equipment for Cellcom on a commission basis.

2. Utah Code Ann. § 58-55-604 (1996) (formerly codified at Utah Code Ann. § 58-55-17) provides:

> No contractor may act as agent or commence or maintain any action in any court of the state for collection or compensation for performing any act for which a license is required by this chapter without alleging and proving that he was a properly licensed contractor when the contract sued upon was entered into, and when the alleged cause of action arose.

decision that Syscom was not barred from maintaining its action by section 58–55–604. We noted that the trial court failed to make any express findings concerning the "crucial threshold issue of whether Syscom [was] a contractor under the Act." *Id.* at 1036. We therefore remanded for detailed findings as to whether Syscom acted as a contractor within the statutory definition. *See id.* at 1039. We also discussed the statutory and common law exceptions to the licensing requirement, holding that, should the trial court determine that Syscom was engaged as a contractor but that it met one or more of these statutory or common law exceptions, the trial court must make detailed factual findings supporting its conclusion. *See id.* at 1039–41.

On remand, the trial court again ruled for Syscom, once again finding that Syscom was not barred by the Act from recovering under the contract. The trial court specifically found that Syscom was not engaged as a contractor under the licensing statute, or, alternatively, that Syscom was exempt from the Act based on both statutory and common law exceptions. The trial court also awarded Syscom $15,000 in attorney fees incurred at trial in foreclosing its mechanics' liens, and $22,744.76 in attorney fees and costs incurred on appeal and post-appeal. Cellcom now appeals from this second judgment.

## ISSUES

Cellcom argues that the trial court erred, on remand, in: (1) holding that Syscom was not a contractor under the Act, and was therefore not barred from suing for materials and services under the contract; (2) failing to find that Syscom breached various material obligations under the parties' contract, excusing Cellcom of its duty to pay or reimburse Syscom under the contract; (3) refusing to order a new trial or reopen the case based on newly discovered evidence of Syscom's breaches and Cellcom's damages; (4) awarding Syscom its attorney fees incurred in the prior appeal; and (5) failing to disqualify itself where there was the appearance of partiality.

## ANALYSIS

I. Trial Court's Determination that Syscom Was Not a Contractor Under the Utah Construction Trades Licensing Act

Cellcom first argues the trial court erred in determining that Syscom was not a contractor under the Act. Cellcom asserts that there is insufficient evidence to support the trial court's determination.

In our prior opinion in this case, we found that the trial court failed to make adequate factual findings supporting its determination that Syscom was not barred by the Act from recovering for services and materials provided under the contract. *See American Rural Cellular, Inc. v. Systems Communication Corp.*, 890 P.2d 1035, 1039 (Utah.Ct.App. 1995). In that opinion, we noted that "the evidence with respect to whether Syscom was engaged as a contractor within the statutory definition, or was simply an agent or participant with Cellcom, is conflicting," *id.*, and that "the record is replete with evidence supportive of both parties' positions," *id.* at 1037. Recognizing that the determination of whether Syscom was acting as a contractor within the meaning of the Act is a highly fact-dependent determination, we then ordered the trial court to make "detailed findings on whether Syscom was engaged as a contractor within the statutory definition." *Id.* at 1039. We further stated that "[t]he trial court's findings should resolve this issue unequivocally, stating the specific subsidiary facts supporting its ultimate factual determinations." *Id.*

■ Therefore, in challenging the trial court's ultimate determination that Syscom was not acting as a contractor under the Act, Cellcom must show that the trial court's factual findings underlying its determination are clearly erroneous. *See Cal Wadsworth Constr. v. City of St. George*, 898 P.2d 1372, 1378 (Utah 1995). To properly challenge the trial court's factual findings, Cellcom must " ' "marshal the evidence in support of the findings and then demonstrate that despite this evidence, the trial court's findings are so lacking in support as to be against the clear weight of the evidence." ' " *Interwest*

*Constr. v. Palmer*, 923 P.2d 1350, 1358 (Utah 1996) (citations omitted).

Although the trial court did not specifically identify which of its findings on remand supported its ultimate factual determination that Syscom did not act as a contractor under the Act, the trial court did make a number of relevant factual findings on this issue. Cellcom has failed to properly challenge these findings by marshaling the evidence in support of the findings and showing that the findings are against the clear weight of the evidence. Instead, Cellcom primarily reargues the evidence supporting its position. Further, a review of the record shows that sufficient evidence existed to support the trial court's findings. Thus, we conclude the trial court did not err in determining that Syscom was not engaged as a contractor under the Act.

## II. Trial Court's Failure to Find Syscom Breached Contractual Conditions Precedent

■ Cellcom also argues the trial court erred in failing to find that Syscom breached contractual conditions precedent, and thus that Cellcom was excused from performance under the contract. Alternatively, Cellcom argues that because Syscom breached mate-

3. Cellcom's witness Marie Bagshaw testified at trial, however, that although it was Cellcom's understanding that the $10,000 service fee would cover the services of Syscom's employees (and *not merely the services of Syscom's partners*, Neal Sorensen and Rod Hauer), portions of the contract did not reflect this understanding.

4. For example, the trial court found that Cellcom "claimed at trial that Syscom failed to account to it for monies handled by Syscom, but ... failed to give instructions or direction to [Syscom] as to claimed deficiencies in financial records and accounting and as to what reports were expected." The trial court also found that "[t]he services performed by [Syscom] improved the liened properties and were reasonable. The charges for work performed both by outside contractors and employees of [Syscom] are properly chargeable against [Cellcom], in addition to the $10,000 per *month agreed upon service fee.*"

5. In addition to its general challenges to the trial court's determination that Syscom was not a contractor under the Act and to the trial court's refusal to find that Syscom failed to satisfy contractual conditions precedent, Cellcom also spe-

rial conditions precedent, Syscom failed to prove that it fully complied with the terms of the contract, and thus it is not entitled to payment under the contract.

Cellcom argues that Syscom breached the contract by overspending, failing to account, filing mechanics' liens, and charging for its employees' time in addition to collecting the $10,000 per month service fee which Cellcom argues was intended to cover all services performed by Syscom.[3] However, Cellcom has failed to show that the trial court's factual findings relating to these issues[4] are against the clear weight of the evidence by properly marshaling the evidence. *See Palmer*, 923 P.2d at 1358. Thus, we assume the correctness of these findings and reject Cellcom's claim that the trial court erred in failing to find Syscom breached or failed to satisfy various conditions precedent.[5]

## III. Rule 59 Request for New Trial Based on Newly Discovered Evidence

Cellcom next argues the trial court erred in refusing to order a new trial (or, alternatively, to allow consideration of additional evidence) based on newly discovered evidence. Cellcom argues that only after the trial ended and Cellcom initiated appeal could Cellcom fully account for the total

cifically challenges two of the trial court's factual findings. First, Cellcom challenges the trial court's finding that Cellcom "breached its covenant of good faith dealing by ceasing to communicate with [Syscom] when [Syscom] was attempting to finish the cell sites and operate the system." Second, Cellcom challenges the trial court's finding that the construction completed by Syscom was reasonably priced and completed in a "workmanlike manner," and that Cellcom was satisfied with the system. However, Cellcom has failed to show that, after marshaling the evidence in support of these findings, the findings are against the clear weight of the evidence and thus clearly erroneous. *See Interwest Constr. v. Palmer*, 923 P.2d 1350, 1358 (Utah 1996). Further, a review of the record shows that these findings are supported by the evidence. For example, Marie Bagshaw testified that the construction done by Syscom on the three cellular sites was done in a "workmanlike manner," completed by the deadline, and that the cost of construction (without including the charges for employee time) for the three sites was close to Syscom's original estimates presented to Cellcom. Thus, we conclude the findings are not clearly erroneous.

amount Syscom expended and for the full extent of Cellcom's resulting damages. Cellcom asserts that it could not do a full accounting at trial because Syscom "failed and refused to turn over all bank statements and other records requested during discovery." Further, Cellcom asserts that it learned after the first appeal commenced that Cellcom employee Marie Bagshaw, Cellcom's sole witness at trial, had withheld information from Cellcom about problems with the system until after trial.

■ Rule 59 of the Utah Rules of Civil Procedure allows a trial court to grant a new trial or modify a judgment upon motion of a party if the party presents "[n]ewly discovered evidence, material for the party making the application, which [the party] could not, with reasonable diligence, have discovered and produced at the trial." This court will not overturn the trial court's decision to deny a motion for a new trial under Rule 59 absent "a manifest abuse of discretion." *Doty v. Town of Cedar Hills*, 656 P.2d 993, 995 (Utah 1982). To be entitled to a new trial based on newly discovered evidence under Rule 59, Cellcom must show that:

"(a) there is material, competent evidence which is in fact newly discovered; (b) by due diligence the evidence could not have been discovered and produced at trial; and (c) the evidence [is not] merely cumulative or incidental but [is] of sufficient substance that there is a reasonable likelihood that with it there would have been a different result."

*Id.* (citation omitted).

■ Cellcom has not satisfied these requirements. First, Cellcom has not shown that the "newly discovered" evidence could not, with due diligence, have been discovered and produced at trial. In denying Cellcom's Rule 59 motion, the trial court specifically found that the matters discovered after the date of trial "were discoverable and could have been discovered with due diligence prior to trial." The Utah Supreme Court has stated that a new trial based on newly discovered evidence is not appropriate where "the evidentiary matters termed as new were the reasonable and proper subjects of discovery and could have been obtained by the

exercise of ordinary diligence." *Powers v. Gene's Bldg. Materials, Inc.*, 567 P.2d 174, 176 (Utah 1977). The evidence that Cellcom argues warrants a new trial is just the type of evidence that should reasonably be obtained in discovery. Because the claim stems from transactions under the parties' contract, Cellcom would be expected to seek records from Syscom regarding Syscom's expenses in performing the contract. Cellcom would also be expected to diligently seek out any evidence available regarding whether Syscom's performance under the contract was substandard, such as the evidence allegedly withheld by Cellcom's employee that construction performed by Syscom was faulty and not done according to specifications.

Cellcom asserts that it was unable to obtain the evidence from Syscom because Syscom refused to release it. However, Cellcom does not explain why it did not seek compulsory discovery through a motion to compel discovery and a subpoena for the records at issue. *See Lembach v. Cox*, 639 P.2d 197, 201 (Utah 1981).

Cellcom has also failed to show that the newly discovered evidence is not merely cumulative of the evidence Cellcom presented at trial, but is of sufficient substance that there is a reasonable likelihood that with it there would have been a different result. We therefore conclude the trial court did not abuse its discretion in denying Cellcom's Rule 59 motion.

### IV. Attorney Fees Incurred in Prior Appeal

Cellcom also challenges the trial court's award, based on the parties' contract, of attorney fees incurred by Syscom in the prior appeal. In awarding Syscom its attorney fees incurred on appeal and in post-appeal proceedings, the trial court found that "[t]he *agreements* between the parties included a provision that in the event of default ... the defaulting party would pay the costs of enforcement including reasonable attorneys fees," and that "Syscom's attorney's fees are chargeable under the Management Agreement and the contract under which the par-

ties operated as the Court finds that Syscom was 'the most prevailing party.'" (Emphasis added.) Cellcom argues that Syscom was not entitled to attorney fees incurred in the prior appeal because Syscom was not the "prevailing party" in that appeal.

In general, attorney fees may be awarded to the prevailing party only if allowed by statute or contract. *See Stewart v. Utah Pub. Serv. Comm'n*, 885 P.2d 759, 782 (Utah 1994). "If provided for by contract, attorney fees are awarded in accordance with the terms of that contract." *Equitable Life & Cas. Ins. Co. v. Ross*, 849 P.2d 1187, 1194 (Utah.Ct.App.1993); *accord Holbrook v. Master Protection Corp.*, 883 P.2d 295, 298 n. 6 (Utah.Ct.App.1994). Therefore, in determining whether Syscom was entitled to attorney fees incurred on appeal based on the parties' contract, we focus on the language of the attorney fees provision.

Cellcom does not appear to contest that there was a contract provision awarding the prevailing party attorney fees in the event of a dispute between the parties. However, the trial court did not make clear exactly what contractual provision it relied upon in awarding Syscom its attorney fees on appeal. In its brief, Syscom argues that it is entitled to its attorney fees based on a provision in the parties' Management Agreement, entitled "Limitation on Liability; Indemnity." This provision states, in part, that

> Cellcom shall indemnify and hold Syscom harmless from and against, any and all damages, liabilities, losses, claims, actions, suits, proceedings, costs or expenses (including reasonable billed attorneys' fees and expenses) of whatever kind and nature imposed on, incurred by or asserted against Syscom in any way relating to or arising out of this Management Agreement or the design, development, construction, operation or management of the nonwire-line cellular radio system in the permit area.

Syscom asserts that this provision, with its broad language referring to holding Syscom harmless from all expenses and attorney fees "of whatever kind and nature . . . in any way relating to" the Management Agreement, is an "all encompassing provision of the contract." However, in determining whether this provision applies to the present circumstances, we must read the provision in light of other relevant provisions in the Management Agreement. *See Nielsen v. O'Reilly*, 848 P.2d 664, 665 (Utah 1992) (stating contracts "should be read as a whole, in an attempt to harmonize and give effect to all of the contract provisions").

The Management Agreement contains a second provision referring to attorney fees. This second provision, entitled "Dispute Resolution," states that "[a]ll disputes in connection with this Management Agreement shall be settled by means of mandatory binding arbitration," and that "[a]ll costs of arbitration and reasonable billed attorney's fees shall be paid by the nonprevailing party."

After reviewing these provisions, we conclude that neither applies to the present circumstances. First, the arbitration provision does not apply to this case because both parties failed to comply with the "binding arbitration" requirement of the contract— Syscom by filing mechanics' liens and Cellcom by filing this action—and because neither party has sought to enforce the arbitration provision. Therefore, the parties are deemed to have waived this provision, and its attorney fees clause no longer governs. *See Chandler v. Blue Cross Blue Shield*, 833 P.2d 356, 358–60 (Utah 1992). Second, given the presence of the arbitration provision in the contract, which explicitly provides that disputes between the parties arising from the contract are to be resolved by arbitration, the hold-harmless provision does not apply to disputes between Syscom and Cellcom, but instead to disputes between Cellcom or Syscom and third parties. In the absence, therefore, of an attorney fees provision that applies to this situation, Syscom was not entitled to attorney fees incurred in the prior appeal based on the parties' contract.[6]

6. Although not relied upon by Syscom in its appellate brief, the record contains a reference to a third attorney fees provision in the parties'

"Sales Agent Agreement." This agreement contained the following provision: "In the event of any legal dispute between the parties, the most

Even though Syscom is not entitled to attorney fees incurred in the prior appeal based on the parties' contract, Syscom is statutorily entitled to its attorney fees relating to its mechanics' lien claims. "The Utah mechanics' lien statutory scheme provides for attorney fees to a party that must undertake court action to recover on the lien." *Richards v. Security Pac. Nat'l Bank,* 849 P.2d 606, 612 (Utah.Ct.App.1993). Utah Code Ann. § 38–1–18 (Supp.1996) states, in part, that "[i]n any action brought to enforce any lien under this chapter the successful party shall be entitled to recover a reasonable attorneys' fee." Utah courts have recognized that "[a]n appeal from a suit brought to enforce a lien qualifies as part of 'an action' for the purposes of this section." *Richards,* 849 P.2d at 612.

■■■ Syscom brought a counterclaim to foreclose its mechanics' liens. This clearly qualifies as "an action brought to enforce any lien" under the mechanics' lien statute. *See First Gen. Servs. v. Perkins,* 918 P.2d 480, 486 (Utah.Ct.App.1996). "Once the narrow requirements of the mechanics' lien statutes have been met, the general policy of Utah courts is to construe the statutes broadly to protect those who enhance the value of property by supplying labor or materials." *Id.*

■■■ Because we affirm the trial court's rulings on this appeal, Syscom is ultimately the successful party in its counterclaim brought to foreclose its mechanics' liens. Thus, under section 38–1–18, Syscom is entitled to recover its reasonable attorney fees incurred through this appeal, including those attorney fees incurred in the prior appeal and on remand, insofar as the attorney fees were incurred in enforcing or defending the mechanics' lien claims.[7]

■■■ However, Syscom is not entitled under section 38–1–18 to attorney fees incurred in pursuing its nonlien claims which were "completely separate" from the lien claims.[8] *Perkins,* 918 P.2d at 486. Thus, on remand, the trial court must determine which portion of Syscom's attorney fees were incurred in enforcing or defending Syscom's mechanics' liens,[9] and award Syscom its attorney fees accordingly.[10]

## V. Failure to Recuse

Cellcom finally argues that the trial judge, Judge John R. Anderson, erred in denying

prevailing party will be entitled to all costs and reasonable billed attorneys' fees." Because this provision contains the "most prevailing party" language also used by the trial court, it is possible the trial court was relying on this provision in awarding Syscom its attorney fees. However, to the extent this litigation is based on the Management Agreement, and not the Sales Agent Agreement, this provision does not control and thus Syscom is not entitled generally to attorney fees under this provision.

7. Although, as Cellcom suggests, there may not technically have been any prevailing or successful party in the prior appeal, in determining who is entitled to attorney fees under section 38–1–18, we look to which party was ultimately successful. *See Stunkel v. Gazebo Landscaping Design, Inc.,* 660 So.2d 623, 627 (Fla.1995). This court did not decide the merits of any claims in the prior appeal, and thus it could not be determined who was the successful party for purposes of the mechanics' lien statute until the trial court made its ruling on remand and until this appeal was resolved.

Moreover, Syscom was forced to defend in the prior appeal to "enforce" its liens, and thus Syscom is entitled to its attorney fees incurred in defending its lien claims on appeal. *Cf. First Gen. Servs. v. Perkins,* 918 P.2d 480, 486 (Utah.

Ct.App.1996) (holding "the successful defense of counterclaims which would otherwise defeat the principal lien claim, in whole or in part, must necessarily be considered for the purpose of awarding attorney fees under the mechanics' lien statute").

8. An exception to this is any attorney fees Syscom incurred in enforcing the terms of the "Sales Agent Agreement." *See supra* note 6. On remand, the trial court awarded Syscom $2376.92 for subscriber commissions under the Sales Agent Agreement. Thus, any attorney fees attributable to this claim for commissions are properly awarded to Syscom as the "prevailing party."

9. For example, Syscom is not entitled to attorney fees incurred in pursuing its claim for $6296.40 for a computer and terminal bought by Syscom for Cellcom, which amount Syscom conceded was a nonlien claim.

10. Because we hold that the trial court must redetermine the amount of attorney fees Syscom is entitled to, we do not reach Cellcom's assertion that there is no indication in the record that the amount of attorney fees and costs entered by the trial court was reasonable.

Cellcom's motion to disqualify himself. Cellcom asserts that Judge Anderson should have recused himself because his former firm's representation of Syscom in a transaction related to this litigation created the appearance of partiality.

In February 1992, Neal Sorensen and Syscom entered into an agreement under which Syscom agreed to buy Sorensen's stock in the corporation. The firm of Beaslin and Anderson represented Syscom and its president at the time, Rod Hauer, and acted as escrow agent for the transaction. The Stock Purchase Agreement, which was drafted by Sorensen's attorney, referred to Syscom's litigation with Cellcom, specifically providing that Syscom would continue to provide the defense for both parties and would pay any judgment that might be entered, and that Sorensen would be entitled to a portion of any money collected as a result of Syscom's counterclaim. At the time this agreement was entered into, Judge Anderson was a partner in the firm of Beaslin and Anderson. Cellcom learned of the Stock Purchase Agreement in July 1995. On October 13, 1995, Cellcom filed a motion for disqualification, which the court denied.

■ Cellcom argues that Judge Anderson should have been disqualified on two grounds: (1) Utah Code Ann. § 78–7–1(1) (1996), which states that a judge may not sit in a case "in which he is interested," and (2) canon 3(E) of the Utah Code of Judicial Conduct, which states, "A judge shall enter a disqualification in a proceeding in which the judge's impartiality might reasonably be questioned...." [11]

## A.   Disqualification under Section 78–7–1(1)

■ We first consider whether Judge Anderson was an "interested" party under section 78–7–1(1). Cellcom asserts that Judge Anderson should be disqualified under this section because he had a "potential financial interest" in the litigation. Cellcom states that Judge Anderson's former law firm represented Syscom and its president in the purchase of stock from Neal Sorensen, and that "in advising Syscom on the fairness of the transaction, Judge Anderson's firm would presumably have assessed the proposed purchase price in light of Syscom's known liabilities and assets," which included "the outstanding litigation with Cellcom." Cellcom asserts that Judge Anderson is liable for any potential claims ensuing from the firm's services, including its evaluation of the likely outcome of this litigation. Cellcom thus states that "because Judge Anderson's potential exposure, *however remote*, depends on the outcome of the litigation, he is an 'interested' party within the meaning of § 78–7–1(1)(a), and recusal was required." (Emphasis added.)

■ In general, "[t]o effect the disqualification of a judge, the interest at issue must be direct, certain, and immediate, and not one which is indirect, contingent, incidental, or remote." 46 Am.Jur.2d *Judges* § 100 (1994); *see also Blake v. Gilbert*, 702 P.2d 631, 641 (Alaska 1985) (stating "an indirect or uncertain interest is not enough to disqualify a judge"); *Bratz v. Bratz*, 4 Conn.App. 504, 495 A.2d 292, 295 (1985) ("The interest in the potential outcome of a case that will disquali-

11. Syscom's primary argument in response is that Cellcom's motion to disqualify was not timely, and that Cellcom should therefore be deemed to have waived its right to move for disqualification. Syscom bases its waiver argument on the fact that, although Cellcom learned of the Stock Purchase Agreement in July 1995, Cellcom did not file its motion to disqualify the judge until October 1995. Syscom argues that "by participating extensively in the proceedings after knowledge of the alleged grounds for disqualification, [Cellcom] waived the right to assert disqualification at such a late stage." Cellcom, however, asserts that its motion was timely. Cellcom states that although it learned of the Stock Purchase Agreement in July, it had to contact its trial counsel from trial to determine whether the trial counsel had been aware of the Stock Purchase Agreement, or whether Judge Anderson had disclosed at trial his former firm's involvement with the defendants. Cellcom asserts that it was only able to learn that its trial counsel knew nothing about this matter by October 3, 1995, and that its motion to disqualify was timely filed ten days later. In its ruling on this issue following oral argument, Judge Anderson appeared to agree that Cellcom had moved in a timely manner, stating that Cellcom's counsel "didn't have a fast way to determine the information." Thus, we reject Syscom's argument that Cellcom's motion was untimely and that Cellcom should therefore be deemed to have waived its right to move for disqualification.

fy a judge must be a *present* one. It must be direct, certain and immediate."); *Goldman v. Bryan,* 104 Nev. 644, 764 P.2d 1296, 1300 (1988) (stating judge's "disqualifying 'interest' must be a present interest in the outcome of the proceeding, 'not some indirect, remote, speculative, theoretical or possible interest'" (quoting *State v. Scarborough,* 75 N.M. 702, 410 P.2d 732, 734 (1966))). In addition, the interest must be "substantial." 46 Am.Jur.2d *Judges* § 101.

In this case, Cellcom has recognized that any interest the judge had in the outcome of this litigation was "remote." Cellcom has not proved that the attorney from Judge Anderson's former firm who represented Syscom in the prior matter actually evaluated this litigation; instead, Cellcom merely speculates that the attorney *may* have evaluated the litigation. The Stock Purchase Agreement was not drafted by the firm of Beaslin and Anderson, but was drafted by Sorensen's attorney. Further, the provision of the agreement referring to this litigation is a standard provision determining who would be responsible for paying any liability arising from the litigation and who would be entitled to any money collected in the event of a favorable verdict. Based on these facts, any interest Judge Anderson had in the outcome of this litigation was remote, indirect, and speculative, and the judge's disqualification was therefore not required under section 78–7–1(1).

## B. Disqualification under Canon 3(E) of the Utah Code of Judicial Conduct

We next consider whether Judge Anderson should have been disqualified under canon 3(E) of the Utah Code of Judicial Conduct.[12] Canon 3(E) states that "[a] judge shall enter a disqualification in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where ... the judge ... had practiced law with a lawyer who had

served in the matter [in controversy] at the time of their association."

The situation here does not fall under those specifically outlined under the canon in which disqualification is required. Judge Anderson did not practice law with an attorney who was counsel *in this matter.* However, recusal may nevertheless be required if the circumstances in this case are such that "the judge's impartiality might reasonably be questioned."

Utah courts have not specifically interpreted the "impartiality might reasonably be questioned" language of this canon; however, federal courts and the Supreme Court have construed this language in discussing the standard for determining whether a judge's recusal is required under the federal counterpart to the Utah rule, 28 U.S.C.A. § 455(a) (1993).[13] *See, e.g., Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 858–70, 108 S.Ct. 2194, 2202–07, 100 L.Ed.2d 855 (1988). In *Liljeberg,* the Supreme Court held that section 455(a) "can be violated ... based on an appearance of partiality, even though the judge was not conscious of the circumstances creating the appearance of impropriety." *Id.* at 858, 108 S.Ct. at 2201. Thus, whether recusal is required "does not depend upon whether or not the judge actually knew of facts creating an appearance of impropriety"; instead, recusal is required "'if a reasonable person, knowing all the circumstances, would expect that the judge would have actual knowledge.'" *Id.* at 860–61, 108 S.Ct. at 2202–03 (citation omitted); *see also United States v. Lovaglia,* 954 F.2d 811, 815 (2d Cir.1992) ("In deciding whether or not to affirm a judge's denial of a [section 455] recusal motion, a court of appeals must ask the following question: Would a reasonable person, knowing all the facts, conclude that the trial judge's impartiality could reasonably be questioned?").

Federal courts have further discussed the types of circumstances that warrant recusal

---

**12.** The Utah Supreme Court has found the provisions of the Code of Judicial Conduct to have legal force. *See Regional Sales Agency v. Reichert,* 830 P.2d 252, 255–58 (Utah 1992) (holding judge should have been disqualified based on canon 3(C)(1)(d) of Utah Code of Judicial Conduct).

**13.** 28 U.S.C.A. § 455(a) (1993) provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

under section 455. For example, "recusal is usually warranted when a judge has a direct personal or fiduciary interest in the outcome of the case, regardless of whether or not the judge is actually aware of that interest at the relevant times." *Lovaglia*, 954 F.2d at 815 (citing *Liljeberg*, 486 U.S. at 850, 859, 108 S.Ct. at 2197, 2202). "Where a case, by contrast, involves remote, contingent, indirect or speculative interests, disqualification is not required." *Id.*

In this case, there was only a very limited connection between the present litigation and Judge Anderson's former firm's representation of defendants in the earlier matter. Further, as discussed above, Judge Anderson did not have any direct financial interest in the outcome of this litigation. Instead, any interest the judge had in the outcome of the litigation was remote and speculative. We conclude that these circumstances are not such as would cause a reasonable person to question the judge's impartiality in this case. Thus, the judge did not err in refusing to recuse himself under canon 3(E).

### CONCLUSION

Cellcom failed to show on appeal that the trial court's findings relating to whether Syscom was engaged as a contractor and whether Syscom breached or failed to satisfy contractual conditions precedent were not supported by the record. The trial court did not err in refusing to find that Syscom failed to satisfy contractual conditions precedent. The trial court also did not abuse its discretion in denying Cellcom's motion for a new trial. Finally, the trial judge did not err in refusing to recuse himself. However, the trial judge did err in awarding Syscom its attorney fees incurred in the prior appeal based on the parties' contract, and we therefore remand to the trial court to redetermine the amount of reasonable attorney fees Syscom may recover under Utah Code Ann. § 38–1–18 (1994).

WILKINS, Associate P.J., and BENCH, J., concur.