292 So.2d 415 (1974)
Vance D. BISHOP and Joseph F. Putnam, Appellants,
v.
JAMES A. KNOWLES, INC. and Wm. Nunamaker Company, Inc., an Ohio Corporation, Appellees.
WM. NUNAMAKER COMPANY, INC., an Ohio Corporation, Appellant,
v.
JAMES A. KNOWLES, INC., et al., Appellees.
Nos. 73-351, 73-390.
District Court of Appeal of Florida, Second District.
March 29, 1974.
*416 Thomas M. Harris of Harris, Harris & Andrews, St. Petersburg, for appellants Bishop and Putnam.
William W. Wilhelm of Phillips, McFarland, Gould & Korones, P.A., Clearwater, for appellee-cross appellant Wm. Nunamaker Company, Inc.
James D. Eckert of Baynard, McLeod, Lang, Eckert & Ballard, St. Petersburg, for appellee Knowles.
GRIMES, Judge.
This controversy originated when the owners of certain land in a trust capacity (Trustees) contracted with James A. Knowles, Inc. (Knowles) to build an apartment. Knowles subcontracted the drywall work to Wm. Nunamaker Company, Inc. (Nunamaker). Disputes thereafter ensued over the quality of Nunamaker's services and its right to compensation. Nunamaker sued Knowles for $31,538.96 and sought to impose a mechanics' lien in this amount upon Trustees' land.
The lower court concluded that Nunamaker had breached its contract with Knowles, thereby causing the contractor to make substantial expenditures to finish the work which should have been performed by Nunamaker. The court offset these expenditures against Nunamaker's claim and entered judgment for Nunamaker in the amount of $13,143.77, plus attorneys' fees and costs. A lien to that extent was impressed against the Trustees' land. The Trustees have appealed Nunamaker's right to a lien because of his failure to file a notice of intent to claim lien until such time as the Trustees had paid Knowles the full *417 amount of the contract price. Nunamaker cross-appeals the granting of the offset against its claim.
As a prerequisite to perfecting a lien against the real property of one not in privity, F.S. § 713.06, F.S.A., requires a subcontractor to serve upon the owner a notice of his intention to claim a lien. Such a notice may be served subsequent to the time prescribed by the statute, but in that event the lien is limited to undisbursed funds then due and owing the contractor. Trowbridge, Inc. v. Hathaway, Fla. 1970, 233 So.2d 129; Crane Co. v. Fine, Fla. 1969, 221 So.2d 145. In the trial court, Nunamaker attacked this problem by showing that one of the three Trustees (James A. Knowles, now deceased) was also the president of Knowles and had signed the Nunamaker subcontract on behalf of Knowles. Thus, Nunamaker successfully argued that since one of the owners had knowledge of the subcontract in the capacity of both contractor and owner, there was no necessity to serve the notice of intent to claim a lien.
In absence of receiving a notice of intent to claim a lien, can it be said that three persons owning land must make payments directly to a subcontractor at the peril of being charged twice upon their failure to do so solely because one of their number signed the subcontract as president of the contracting firm? We think not.
The recommended form of notice prescribed by F.S. § 713.06(2)(c), F.S.A., includes the following language:
"... Florida law prescribes the serving of this notice and restricts your right to make payments under your contract in accordance with § 713.06, Florida Statutes... ."
Florida Statute § 713.06(3)(c) 1, F.S.A., provides that when any payment except the final payment becomes due to the contractor:
"1. The owner shall pay or cause to be paid, within the limitations imposed by subparagraph 2. the sum then due to each lienor giving notice prior to the time of said payment... . Except laborers, the owner shall be under no obligation to any lienor from whom he has not received a notice at the time of making any such payment."
The statutory intent appears clear. The notice is more than written advice that a particular subcontractor is working on the job. If this were the only purpose, there would be many instances where there would be no need for the notice to be served because owners often have knowledge of the identity of one or more of the subcontractors involved in the construction of their building. The notice of intent to claim a lien is a notification that pursuant to the statute the subcontractor is looking to the owner for payment.
We do not overlook the case of Boux v. East Hillsborough Apartments, Inc., Fla. App.2nd, 1969, 218 So.2d 202. In that case this court held that where the land-owning corporation was a wholly owned subsidiary of the corporate contractor and both corporations had common officers, the failure to file a notice to owner did not deprive a subcontractor of his lien. This court said:
"The purpose of the notice is to protect an owner from the possibility of paying over to his contractor sums which ought to go to a subcontractor who remains unpaid. The burden is on the subcontractor to insure that the owner knows of his claim...." (emphasis added)
In Boux, the fact that for practical purposes the owner and the contractor were one and the same dictated the conclusion to dispense with the statutory requirement to serve the notice. The relationship between the owner and the contractor as shown by the record in the instant case was not such as would authorize the imposition of a lien when the notice was not served until after the owner had disbursed its funds. Cf. Approved Dry Wall Const., Inc. v. Morgan Prop., Inc., Fla.App.3rd, 1972, 263 So.2d 243. Thus, Nunamaker must be relegated *418 to the remedy of seeking recovery from Knowles with whom it was in privity.
The thrust of Nunamaker's cross-appeal centers upon the court having admitted testimony concerning drywall deficiencies on certain floors of the apartment in the face of written statements signed by Knowles' superintendent expressing approval of the work on those floors with respect to "drywall and texture." Nunamaker argued that any testimony about poor workmanship on those floors violated the parol evidence rule.
While these statements represented strong evidence in support of Nunmaker's contention that he had properly performed, we do not think they were such as would totally preclude the introduction of testimony concerning substandard workmanship on the floors in question. Even Nunamaker's president admitted that the words "accepted for drywall and texture" were vague and did not necessarily include all the work required of Nunamaker under the subcontract. Moreover, the evidence reflected certain circumstances surrounding the obtaining of these statements of approval which suggested that there was not necessarily an intent to absolutely release Nunamaker for his work on those floors. We believe the testimony was properly admitted to be considered together with all the other evidence bearing on whether Nunamaker breached its subcontract. Cf. Miami Beach First National Bank v. Tropical Park, Inc., Fla.App.3rd, 1968, 215 So.2d 752. Since there is competent substantial evidence in the record to support the court's finding with respect to the offset, Nunamaker's cross-appeal cannot be sustained.
Accordingly, the judgment against the Trustees is reversed; the judgment against Knowles is affirmed.
McNULTY, Acting C.J., and BOARDMAN, J., concur.