465 So.2d 1388 (1985)
W.G. MILLS, INC., a Florida Corporation, and United States Fidelity & Guaranty Company, Appellants,
v.
M & MA CORPORATION, a Florida Corporation, D/B/a McCain Building Supply, and Florida Ceiling & Partitions, Inc., a Florida Corporation, Appellees.
No. 84-1299.
District Court of Appeal of Florida, Second District.
March 20, 1985.
*1389 Daryl J. Brown and David E. Gurley of Abel, Band, Brown, Russell & Collier, Sarasota, for appellants.
Charles M. Phillips, Jr. of Jacobs, Robbins, Gaynor, Burton, Hampp, Burns, Bronstein & Shasteen, Clearwater, and Robert M. Barker, Largo, for appellee M & MA Corp.
BOARDMAN, EDWARD F. (Ret.),
W.G. Mills, Inc. (Mills), a general contractor, and United States Fidelity Guaranty Company (USFG), its surety, appeal the final judgment obligating them to compensate M & MA Corporation d/b/a McCain Building Supply (McCain) for materials supplied to a public works construction project. The question presented is whether McCain is entitled to recovery against the contractor and surety under section 255.05, Florida Statutes (1983), the Little Miller Act.
Section 255.05(1) provides subcontractors and suppliers not in privity with the general contractor with a cause of action against the contractor and its bond for materials and labor provided on construction projects involving publicly held property.[1] Recovery under the statute is conditioned upon compliance with the following notice provisions of section 255.05(2):

*1390 (2) A claimant, except a laborer, who is not in privity with the contractor and who has not received payment for his labor, materials, or supplies shall, within 45 days after beginning to furnish labor, materials, or supplies for the prosecution of the work, furnish the contractor with a notice that he intends to look to the bond for protection. A claimant who is not in privity with the contractor and who has not received payment for his labor, materials, or supplies shall, within 90 days after performance of the labor or after complete delivery of the materials or supplies, deliver to the contractor and to the surety written notice of the performance of the labor or delivery of the materials or supplies and of the nonpayment. No action for the labor, materials, or supplies may be instituted against the contractor or the surety unless both notices have been given. No action shall be instituted against the contractor or the surety on the bond after 1 year from the performance of the labor or completion of delivery of the materials or supplies.
On August 26, 1980, Pinellas County entered into a contract with Mills for the construction of the Pinellas County Criminal Court's building. Mills delivered to the county a performance and payment bond in compliance with section 255.05(1), Florida Statutes (1983). Mills then subcontracted with Florida Ceiling & Partitions, Inc. (Florida Ceiling) for the waterproofing, metal studding, and drywall installation on the project. McCain became involved in the project by agreeing to supply Florida Ceiling with drywall building material.
McCain furnished materials to the project from April 10, 1981, to December 18, 1981. On August 7, 1981, 119 days after the first delivery of materials, McCain sent Mills and USFG a notice to owner informing them that it was supplying materials and therefore intended to rely on the performance bond for compensation protection. On March 9, 1982, McCain sent a notice of nonpayment in the amount of $36,631.58, the balance allegedly due and owing to McCain from Florida Ceiling. Having fully compensated Florida Ceiling, Mills, of course, refused payment. McCain then brought suit against Mills and USFG to recover on the surety bond. The trial court entered final judgment in favor of McCain, concluding that Mills "had actual notice of the plaintiff's furnishing labor, materials and/or supplies for the prosecution of the work."
Mills contends the trial court erred in concluding that Mills' knowledge of McCain's involvement with the project was sufficient notice under the statute. McCain, on the other hand, claims that in addition to actual notice, Mills also received timely written notice in the form of a waiver of lien issued to Mills. We agree with Mills.
It is clear that a condition precedent to the maintenance of an action of this kind is compliance with the statutory notice requirement within the prescribed time limit. *1391 School Board of Palm Beach County v. Fasano, Inc., 417 So.2d 1063 (Fla. 4th DCA 1982); Fuller Industries, Inc. v. R. Terry Balzier & Son, Inc., 188 So.2d 2 (Fla. 2d DCA 1966); § 255.05(2), Fla. Stat. (1982). However, what constitutes proper notice is not clearly delineated by the statute and therefore poses a difficult question. As stated by the Fourth District in School Board of Palm Beach County v. Fasano, Inc., our objective is to "determine the intent of the legislature and, if possible, to see that the purpose of the statute is accomplished." 417 So.2d at 1065. With respect to the legislative purpose behind section 255.05, the court stated:
Clearly, the major purpose of Section 255.05(1) is to protect subcontractors and suppliers by providing them with an alternative remedy to a mechanics lien on public projects. City of Ft. Lauderdale v. Hardrives Co., 167 So.2d 339 (Fla. 2d DCA 1969). In addition, however, Section 255.05(2) protects the contractor and the contractor's surety from having to account to unknown suppliers and subcontractors by putting the burden on the claimants to advise the contractor and surety of their participation on the project and to advise if they are not promptly paid.
417 So.2d at 1065.
In Fasano, a case relied upon by McCain, Palm Beach County contracted with Fasano for the construction of a technical school. Fasano obtained a performance bond from USFG. Carter Electric was Fasano's electrical subcontractor for the project. On September 18, 1978, Major Electrical Supplies sent a written notice to the school board stating that it was furnishing electrical materials to the project under an agreement with Carter Electric. The supplier sent a copy of the notice to both Fasano, as general contractor, and USFG. The supplier furnished materials from October 2, 1978, until February 22, 1980. On March 14, 1980, the supplier submitted a request for payment which was refused. The supplier then filed suit against the contractor and surety. The trial court dismissed the supplier's claim on the basis that it had failed to comply with the notice provisions of section 255.05(2). The general contractor and the surety argued on appeal that the trial court's decision should be affirmed because the supplier's notice did not state that it intended to look to the bond for protection.
On appeal the Fourth District reversed and held that Major Electric's letter substantially complied with the requirements of the statute. In so holding, the court relied on the fact that the notice was in writing and was delivered by certified mail to the surety as well as the general contractor. The court felt that by noticing both the surety and the contractor, Major evinced an intent to rely on the bond. For this reason, the court discounted the fact that the notice lacked a specific statement by Major that it intended to rely on the bond.
While we agree with the result reached in Fasano, we do not find it controlling of the instant case. McCain's only basis for asserting that Mills received written notice is the fact that Mills had in its files a waiver of lien executed by McCain which was one of several from sub-subcontractors and materialmen that were attached to a prior Florida Ceiling draw request. This was insufficient to serve as the statutory notice that McCain intended to look to the bond for protection. Our remaining concern, therefore, is whether Mills' knowledge of McCain's deliveries can suffice as the notice required by the statute.[2]
We previously addressed this question in a related context in Bishop v. James A. Knowles, Inc., 292 So.2d 415 (Fla. 2d DCA 1974). In Bishop, one of the owners of *1392 certain land held in trust had knowledge of a subcontract through his capacity as president of the general contractor. The subcontractor sued under section 713.06, Florida Statutes (1973) (amended 1977, 1980), for monies due under the subcontract and sought to impose a mechanics lien on the land. Like the Little Miller Act, section 713.06 conditioned recovery under proper notice.[3] At trial, the subcontractor successfully argued that in view of the owner's knowledge of the subcontract, there was no necessity to serve notice of intent to claim a lien. We disagreed, however, and said:
The statutory intent appears clear. The notice is more than written advice that a particular subcontractor is working on the job. If this were the only purpose, there would be many instances where there would be no need for the notice to be served because owners often have knowledge of the identity of one or more of the subcontractors involved in the construction of their building. The notice of intent to claim a lien is a notification that pursuant to the statute the subcontractor is looking to the owner for payment.
We think the reasoning of Bishop is applicable in the instant case. Although section 713.06 required a written and more detailed notice than section 255.05, the intent of the statutes appears the same  that an owner or contractor know of a claim for payment. Thus, we read the notice of section 255.05(2) as requiring something more than an awareness that a particular subcontractor or supplier is on the job. To hold otherwise would render the statute a nullity for general contractors often know that a company is furnishing materials to a project without knowing that they have not been paid.
In sum, because McCain did not notice Mills in accordance with the legislative intent it cannot recover under section 255.05. Accordingly, we reverse the final judgment and remand for proceedings consistent herewith.
GRIMES, A.C.J., and CAMPBELL, J., concur.
NOTES
[1] The right of action allowed by section 255.05(1) is the legislative alternative to a mechanics lien, which cannot be secured against government owned land. § 713.01(14), Fla. Stat. (1983). Section 255.05(1) provides:

(1) Any person entering into a formal contract with the state or any county, city, or political subdivision thereof, or other public authority, for the construction of a public building, for the prosecution and completion of a public work, or for repairs upon a public building or public work shall be required, before commencing the work, to execute a payment and performance bond with a surety insurer authorized to do business in this state as surety. Such bond shall be conditioned that the contractor perform the contract in the time and manner prescribed in the contract and promptly make payments to all persons defined in s. 713.01 whose claims derive directly or indirectly from the prosecution of the work provided for in the contract. Any claimant may apply to the governmental entity having charge of the work for copies of the contract and bond and shall thereupon be furnished with a certified copy of the contract and bond. The claimant shall have a right of action against the contractor and surety for the amount due him. Such action shall not involve the public authority in any expense. However, at the discretion of the director of the Department of General Services when such work is done for the state, or at the discretion of the official or board awarding such contract when such work is done for any county, city, political subdivision, or public authority, any person entering into such a contract which is for $100,000 or less may be exempted from executing the payment and performance bond. The director of the Department of General Services may delegate to state agencies the authority to exempt any person entering into such a contract amounting to $100,000 or less from executing the payment and performance bond. In the event such exemption is granted, the officer or officials shall not be personally liable to persons suffering loss because of granting such exemption.
[2] It was undisputed that Mills did not receive McCain's notice to owner until August 7, 1981, well after the forty-five-day time period had run.
[3] Section 713.06(2)(a):

All lienors under this section, except laborers, as a prerequisite to perfecting a lien under this chapter and recording a claim of lien, shall be required to serve a notice on the owner setting forth the lienor's name and address, a description sufficient for identification of the real property, and the nature of the services or materials furnished or to be furnished. This notice must be served before commencing or not later than forty-five days from commencing to furnish his services or materials but in any event before the date of furnishing the affidavit under subsection (3)(d)1, of this section, or abandonment, whichever shall occur first. The serving of this notice shall not dispense with recording the claim of lien. This notice shall not be deemed to constitute a lien, cloud or encumbrance on said real property nor actual nor constructive notice of any of the same.