940 So.2d 444 (2006)
PROFESSIONAL PLASTERING & STUCCO, INC., Appellant,
v.
BRIDGEPORT-STRASBERG JOINT VENTURE, et al., Appellee.
No. 5D03-2572.
District Court of Appeal of Florida, Fifth District.
July 12, 2006.
Rehearing Denied October 24, 2006.
*445 Phillip C. Dozier of Phillip C. Dozier, P.A., Apopka, for Appellant.
William L. Grant and Earnest DeLoach, Jr., of Shutts & Bowen, LLP, Orlando, for Appellee.

ON MOTION FOR REHEARING EN BANC
THOMPSON, J.
Professional Plastering & Stucco, Inc. ("Professional Plastering") moves for rehearing of our reversal of the trial court's order, which granted summary judgment to General Accident Insurance Company of America ("General Accident"). Prof'l Plastering & Stucco, Inc. v. Bridgeport-Strasberg Joint Venture, 30 Fla. L. Weekly D299, 2005 WL 176601 (Fla. 5th DCA Jan. 28, 2005). We grant the motion for rehearing, withdraw our previous opinion, and substitute in its place the following opinion that affirms in part and reverses in part the trial court's order.
Professional Plastering was the subcontractor on a construction project. It sued the contractor in count one for breach of contract, concerning money owed for working on the project. In count two, it sued General Accident on a bond issued in connection with the project. Professional Plastering alleged that it was owed $88,387.12 for unpaid labor and materials and sought payment from General Accident under the bond. Professional Plastering claimed that work on the construction project had begun before the bond was issued and the notice of commencement was filed. It alleged that the bond was a common law bond and that the notice and other requirements of section 713.23, Florida Statutes (1999), did not apply. The court, however, ruled that the bond was a statutory bond and dismissed count two with prejudice, even though the court indicated during the summary judgment hearing that it was not going to decide whether proper bond notices were given because the dispute over notice was not yet ripe for decision.
The issue framed for our consideration, is whether the bond in this case was a statutory bond or common law bond. We follow the Second District's analysis in Bridgeport, Inc. v. Tampa Roofing Co., 903 So.2d 306, 309 (Fla. 2d DCA 2005) (Bridgeport), and hold that the trial court correctly found that the bond in this case was a statutory bond, and appropriately granted General Accident's motion for summary judgment on Professional Plastering's action on a common law bond claim. Because the court specifically indicated it was not going to decide whether Professional Plastering properly and timely served the notices of nonpayment, and as there appears to be an affidavit in the file that controverts the issue of proper notification, we reverse that part of the order dismissing count two with prejudice.
The payment bond issued on 21 July 1999 was derived from an American Institute of Architects boilerplate form. Its terms and coverage were substantially similar to that outlined in section 713.23(3). See Bridgeport, 903 So.2d at 308; see also Hawaiian Inn of Daytona Beach, Inc. v. Dunn, 342 So.2d 132, 133 (Fla. 1st DCA 1977) (holding that the bond "was intended to and did substantially comply with [s]ection 713.23"; therefore, because its conditions "were not broader and more protective than the statute required," the contention that the bond was a common law bond failed). The bond's *446 notice provision stated that no claimant could commence an action on the bond
[u]nless claimant, other than one having a direct contract with the Principal, shall have given written notice to two of any of the following: the Principal, the Owner, or the Surety . . . within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is made. . . .
However, the top of this bond was stamped with the following language: "This bond hereby is amended so that the provisions and limitations of section 255.05 or section 713.23 . . ., whichever is applicable, are incorporated herein by reference."[1] In compliance with sections 713.13 and 713.23(1), the bond was attached to the notice of commencement recorded and entered on 30 July 1999.
Section 713.02(6), Florida Statutes (1999), provided that an owner could avoid construction liens on its property, other than that of the contractor furnishing a payment bond to the owner, by requiring the contractor to furnish a payment bond under section 713.23, which provided:
(1)(a) The payment bond required to exempt an owner under this part shall be furnished by the contractor in at least the amount of the original contract price before commencing the construction of the improvement under the direct contract, and a copy of the bond shall be attached to the notice of commencement when the notice of commencement is recorded. The bond shall be executed as surety by a surety insurer authorized to do business in this state and shall be conditioned that the contractor shall promptly make payments for labor, services, and material to all lienors under the contractor's direct contract. Any form of bond given by a contractor conditioned to pay for labor, services, and material used to improve real property shall be deemed to include the condition of this subsection.
(b) The owner, contractor, or surety shall furnish a true copy of the bond at the cost of reproduction to any lienor demanding it. Any person who fails or refuses to furnish the copy without justifiable cause shall be liable to the lienor demanding the copy for any damages caused by the refusal or failure.
(c) Either before beginning or within 45 days after beginning to furnish labor, materials, or supplies, a lienor who is not in privity with the contractor, except a laborer, shall serve the contractor with notice in writing that the lienor will look to the contractor's bond for protection on the work. If a notice of commencement is not recorded, or a reference to the bond is not given in the notice of commencement, and in either case if the lienor not in privity with the contractor is not otherwise notified in writing of the existence of the bond, the lienor not in privity with the contractor shall have 45 days from the date the lienor is notified of the existence of the bond within which to serve the notice. . . .
(d) In addition, a lienor is required, as a condition precedent to recovery under the bond, to serve a written notice of nonpayment to the contractor and the surety not later than 90 days after the final furnishing of labor, services, or materials by the lienor. . . . The time period for serving a written notice of nonpayment shall be measured from the last *447 day of furnishing labor, services, or materials by the lienor . . .
(e) No action for the labor or materials or supplies may be instituted or prosecuted against the contractor or surety unless both notices have been given. . . . The time period for bringing an action against the contractor or surety on the bond shall be measured from the last day of furnishing labor, services, or materials by the lienor . . .
***
(2) The bond shall secure every lien under the direct contract accruing subsequent to its execution and delivery, except that of the contractor. Every claim of lien, except that of the contractor, filed subsequent to execution and delivery of the bond shall be transferred to it with the same effect as liens transferred under s. 713.24. . . .
(Emphasis added).
Professional Plastering argues that the bond in question is a common law bond because it asserts that the bond was filed in deviation of the statutory scheme. More specifically, Professional Plastering alleges that work began on the construction site before the bond was executed, issued, and furnished as required by statute. Professional Plastering asserts that the appellees violated the statutory requirement that the bond be furnished before "commencing the construction of the improvement under the direct contract." Indeed, the record reflects that a subcontractor engaged in some site preparation, including demolition of structures and removal of mobile homes, before the bond was provided.
General Accident, however, alleges that Professional Plastering failed to provide timely statutory notices of nonpayment, as required by the bond and statute. Professional Plastering did not begin performing work on the project until 27 December 1999, about five months after the bond was in place. It worked on the project until 16 September 2000. By the plain language of section 713.23(1)(d), Professional Plastering was required to give its notice of nonpayment to the general contractor and surety by no later than 15 December 2000, i.e., within 90 days after the final furnishing of labor, services, or materials. We cannot tell from the record whether the general contractor was ever served with a notice of nonpayment, nor can we tell whether the surety was served 107 days late as alleged by General Accident. General Accident argues that it is not required to perform under the bond if Professional Plastering failed to provide timely notice of nonpayment. The response from Professional Plastering is that its notice was timely because General Accident failed to issue the bond before commencing work on the project. Professional Plastering postulates that General Accident's late provision of the bond renders the bond a common law, rather than a statutory bond, and that its notice was therefore timely.
While the issue of whether the notice was timely will at some point be critical, it is not germane to our present review because it was reserved by the trial judge for later determination. Our only concern is whether the filing of the bond after a small amount of work had already begun on the project renders it a common law bond. We conclude that it remains a statutory bond for all lienors who seek relief after its filing. As to those who seek payment for work done prior to the filing of the bond, the bond does not exempt the project from the liens of such persons. The project, for those lienors, is essentially unbonded. We come to this conclusion after a thorough review of the applicable case and statutory law.
*448 The Second District has ruled that a bond similar to that in this case is a statutory bond. In Bridgeport, the surety refused to pay on a bond because, inter alia, the claimant did not meet the notice requirements of section 713.23. Bridgeport, 903 So.2d at 308. The trial court ruled that the owner, contractor, and surety had not complied with several requirements of section 713.23. Therefore, the trial court held that the bond was a common law bond that was not subject to section 713.23's notice requirements, and granted summary judgment for the subcontractor. Id. at 308. The appellate court reversed.
The Second District initially considered whether the bond was a statutory bond or a common law bond. Id. It concluded that, "because the payment bond did not provide more expanded coverage than the statutory bond, it was not a common law bond." Id. (citing Standard Heating Serv., Inc. v. Guymann Constr., Inc., 459 So.2d 1103, 1105 (Fla. 2d DCA 1984), and Nat'l Fire Ins. Co. of Hartford v. L.J. Clark Constr. Co., 579 So.2d 743, 744-45 (Fla. 4th DCA 1991)). The bond "contain[ed] terms that [were] substantially in the form required by section 713.23(3)." Id. Therefore, the Second District concluded that the bond was a statutory bond under section 713.23 and not a common law bond. Id. at 308-09. Here, similarly, there is no dispute that the bond did not provide more expanded coverage; moreover, it was stamped with language explicitly incorporating the provisions and limitations of section 713.23.
The court ruled that the subcontractor's failure to comply with the statute's condition precedent to filing suit was fatal. Bridgeport, 903 So.2d at 309 (citing Bridgeport Inc. v. Rinker Materials Corp., 849 So.2d 1193 (Fla. 4th DCA 2003) (Rinker), and Mursten Constr. Co. v. C.E.S. Indus., Inc., 588 So.2d 1061 (Fla. 3d DCA 1991)). Section 713.23 was to be accorded "a strict and literal meaning." Id. (quoting Rinker, 849 So.2d at 1195-96). Therefore:
[E]ven if the Subcontractor is correct that the Owner, the Surety, and the Contractor did not fully adhere to the requirements of chapter 713, the Subcontractor was not excused from complying with the requirements of section 713.23 that it provide notice of nonpayment before filing suit and that it file suit within one year from its completion of performance, and the bond did not convert from a statutory payment bond to a common law bond.
Bridgeport, 903 So.2d at 309.
The court also noted that the subcontractor showed no prejudice as a result of the alleged failure that could excuse its own obligation to comply with statutory requirements. Id. at 310. Therefore, the trial court's order was reversed, with directions to enter judgment in favor of the Surety on the bond claim. Id. We agree with this result, and also hold that Professional Plastering's allegation that work commenced before the bond was furnished did not convert the bond from a statutory bond to a common law bond. Moreover, we note that, like the subcontractor in Bridgeport, Professional Plastering here cannot justify its failure to provide the notice of nonpayment required by statute on any prejudice caused by the owner, principal, or surety. See Bridgeport, 903 So.2d at 310.[2]
*449 The Third District reached a similar result in another case and held that the failure to file a notice of commencement at all did not absolve a material supplier of its responsibility for complying with statutory notice requirements. Mursten Constr., 588 So.2d at 1061. There, the notice of bond was not filed until after the supplier sued the owner to foreclose on a mechanic's lien. Id. at 1062. The supplier amended its complaint to add a claim against the surety and general contractor to recover under the bond. Id. However, the supplier failed to serve written notice of nonpayment on the contractor. Id. The Third District, citing its obligation "to give the mechanic's lien statute a strict, and therefore literal, reading," held that the supplier's failure to serve written notice constituted a failure to comply with the statutory condition precedent to recovery on the bond. Id. at 1062-63; see also Rinker, 849 So.2d at 1195 (holding that late notice of the bond did not excuse supplier from its obligation to comply with statutory notice requirements).
The holdings in Bridgeport and Mursten Construction appear consistent with a full reading of section 713.23. This court must give full effect to statutory provisions and construe them in harmony with each other. Am. Home Assurance Co., 908 So.2d at 367-68. Subsection (1)(a) requires the bond under this section to be issued before work commences: the payment bond "shall be furnished . . . in at least the amount of the original contract price before commencing the construction of the improvement under the direct contract, and a copy of the bond shall be attached to the notice of commencement when the notice of commencement is recorded." But the statute clearly contemplates the possibility that a payment bond may not immediately satisfy this requirement. For example, section 713.23(1)(c) addresses notice where a notice of commencement is not filed or the bond is not referenced in a notice of commencement. Perhaps most importantly, section 713.23(2) says specifically that:
The bond shall secure every lien under the direct contract accruing subsequent to its execution and delivery, except that of the contractor. Every claim of lien, except that of the contractor, filed subsequent to execution and delivery of the bond shall be transferred to it with the same effect as liens transferred under s. 713.24.
(Emphasis added).
Here, it is undisputed that Professional Plastering began work on the project months after the payment bond was issued and that it had notice of the bond. To adopt its position would require us to ignore this provision of the statute (as well as the plain language of the bond itself), and to fail to give it full effect and construe it in harmony with the statute's other language.
Professional Plastering urges us to conclude that its notice requirements were different because the contractor began work before the notice of commencement and bond were filed. We find no statutory or case law to support this conclusion. On the contrary, such an approach could needlessly complicate construction litigation subjecting sureties to attack by delinquent claimants; parties that fail to comply with explicit notice requirements, the statutory condition precedent to recovery, could seek payment anyway based on alleged technical *450 violations. We join the Second District in rejecting this approach, which is inconsistent with a strict reading of section 713.23. Here, the surety issued a bond that was facially sufficient under 713.23 and duly noticed. The subcontractor began work on the project many months after the notice of commencement and attached bond were recorded. The subcontractor, therefore, was required to comply with the notice obligations contained in section 713.23(d).
We agree with the dissent that the statute seeks to protect those who provide labor and materials for real property improvement, but note that the legislature tempered that goal with strict notice requirements. Accordingly, we follow Bridgeport. A contrary rule would grant claimants, who failed to fulfill statutory conditions precedent to recovery, a powerful incentive to salvage their noncompliance for spurious reasons. These claimants could dig for "noncompliance" wholly unrelated to the work the claimants performed and the conditions the claimants failed to meet. This would encourage needlessly expensive and time-consuming litigation and discovery over tangential issues, and trial courts, rather than granting summary judgment because claimants did not fulfill the statutory conditions precedent, could expend further resources on irrelevant issues. Such a rule might also needlessly increase the transaction costs of bonding construction projects because a surety could no longer rely on the notice requirements provided by statute if it erroneously relied on a principal's representations that, for example, work had not already commenced. Moreover, this contrary rule would serve no purpose other than to relieve the subcontractor from its own failure to comply with the statute's explicit condition precedent.
The trial court correctly found that the bond was a statutory bond, and we agree with the trial court's conclusion. We reverse that part of the summary judgment to the effect that the judgment with respect to count two is with prejudice, and remand the case to the trial court, because the matter of whether proper notice was given by Professional Plastering was specifically excluded as a subject of the summary judgment hearing.
The order of the trial court is AFFIRMED in part, REVERSED in part, and REMANDED.
GRIFFIN, SAWAYA, MONACO, LAWSON and EVANDER, JJ., concur.
TORPY, J., concurring in part, and dissenting in part, with opinion, in which PLEUS, C.J., PALMER and ORFINGER, JJ., concur.
TORPY, J., concurring in part and dissenting in part.
In this dispute between a subcontractor and a payment bond surety, the primary issue on appeal is whether the bond qualifies as a so-called "statutory" payment bond. The importance of this determination to the parties here is that, if the bond is a statutory bond, the statutory notice provisions (rather than the notice provisions expressed in the bond itself) are preconditions to the action against the surety. Apparently, although not clear from the record, Appellant complied with the notice provisions required by the terms of the bond but not the more stringent provisions required by the statute. Notwithstanding the remand by the majority, it appears that the majority opinion puts a stake through the heart of Appellant's remaining claim.
Our resolution of this issue is purely a question of legislative intent based on the language of the pertinent provisions of the *451 Construction Lien Law, chapter 713, Florida Statutes. Under the Construction Lien Law, an owner can exempt himself from liens by requiring the contractor to furnish a statutorily qualified payment bond. In this regard, the statute provides:
In any direct contract the owner may require the contractor to furnish a payment bond as provided in s. 713.23, and upon receipt of the bond the owner shall be exempt from the other provisions of this part as to that direct contract. . . .
§ 713.02(6), Fla. Stat. (emphasis added).
To qualify, the bond must, among other statutory requirements,
be furnished by the contractor in at least the amount of the original contract price before commencing the construction of the improvement under the direct contract, and a copy of the bond shall be attached to the notice of commencement when the notice of commencement is recorded.
§ 713.23(1)(a), Fla. Stat. (emphasis added).
Although the majority acknowledges this language, it concludes that other subsections of 713.23, namely subsections (1)(c) and (2), "contemplate" that a statutory bond need not be furnished before construction is commenced to be effective as to claimants who furnish labor and materials after the bond is furnished. In holding as it has, the majority implicitly holds that the various subsections are contradictory. I disagree.
Neither of the subsections upon which the majority relies contradict subsection (1)(a). Subsection (1)(c) addresses the separate requirement that a qualifying bond be attached to and recorded with the notice of commencement. When the bond is not attached to the notice of commencement or the notice of commencement is not recorded, as required by subsection (1)(a), claimants may not be aware of the bond's existence. In that circumstance, subsection (1)(c) merely extends the time for claimants to provide statutory notices until after they receive actual notice of the existence of the bond. Thus, subsection (1)(c) deals with the failure to record the bond. In applying this subsection to the instant case, the majority mistakenly equates "furnishing" a bond with "recording" a bond. These are clearly distinct statutory requirements under subsection (1)(a), as evidenced by the use of the conjunction "and" following a comma in subsection (1)(a). To qualify under subsection (1)(a), the bond must be both "furnished" before commencement "and" attached to the recorded notice of commencement. Subsection (1)(c), therefore, is not applicable here where construction began before the bond was furnished.
Subsection (2), also relied upon by the majority, similarly does not contradict subsection (1)(a). It merely states what effect the bond has on "liens." When a proper bond is provided, subsection (2) states that the bond secures all subsequent liens, thereby exempting the owner's property, an essential purpose of the payment bond statute. The bond to which subsection (2) refers is the bond specified in subsection (1)(a). Otherwise, subsection (1)(a) becomes superfluous, because, under the majority's interpretation of subsection (2), any bond could exempt the owner's property. Clearly, that is not intended.
As an apparent alternative to its statutory analysis, the majority holds that literal compliance with section 713.23(1)(a) is not required here because this particular claimant furnished labor and materials after the bond was furnished and was not harmed by the delay. Thus, the majority reaches the paradoxical conclusionwithout any statutory supportthat the same bond can be a "statutory" bond as to some claimants but a "common law" bond as to others. Under a logical extension of the holding of the majority, any of the statutory *452 criteria for 713.23 bonds may be circumvented when no actual harm results from the failure to strictly adhere to the legislative criteria. For example, if the bond is not furnished in "at least the amount of the original contract price," but if the amount is sufficient to pay all outstanding claims, the majority apparently would conclude that no harm equates to statutory compliance. But see Gen. Elec. Co. v. Commercial Standard Ins. Co., 335 So.2d 624, 625 (Fla. 1st DCA 1976) (actual prejudice notwithstanding, § 713.23 bond must be furnished in amount of contract to qualify as statutory bond).
I disagree with the "no prejudice" analysis of the majority. The lien statute is entirely a legislative creation, and we are obligated to enforce it in accordance with the clear, manifest intent of the legislature. Hunt Truck Sales & Serv., Inc. v. Bonanza Const., Inc., 353 So.2d 612, 613 (Fla. 4th DCA 1977) (section 713.23 bond must comply with provisions of that section). Furthermore, even assuming that the lack of prejudice may excuse strict performance under section 713.23, in excusing the surety from the technical nuances of the statute, the majority affords disparate treatment to sureties and claimants. If sauce for the goose is sauce for the gander, claimants should be excused from compliance with statutory notice provisions when the surety is not prejudiced. Unless a payment bond surety has released its principal before learning of the claim, it would not appear that the surety is prejudiced by untimely notice.[1]
Florida Crushed Stone Co. v. American Home Assurance Co., 815 So.2d 715 (Fla. 5th DCA 2002), upon which the majority relies to support its "no prejudice" analysis is inapposite. That case dealt with a public project payment bond under the provisions of section 255.05, Florida Statutes. The distinction is significant because the public project payment bond statutory scheme contains an unambiguous expression of legislative intent that public project payment bonds must be construed as statutory bonds and "shall not under any circumstances be converted into common law bonds." § 255.05(4), Fla. Stat. (2005). In light of this express legislative mandate, the court in Florida Crushed Stone Co. held that to construe a nonconforming public project payment bond as a common law bond would be "contrary to the express language of the statute." Id. at 716. See also Am. Home Assur. Co. v. Plaza Materials Corp., 908 So.2d 360 (Fla.2005) (noting 1980 legislative change to § 255.05, precluding courts from construing deficient statutory bond as common law bond).[2]
The disposition I advocate is not one of form over substance. A subcontractor or supplier should be able to make an objective determination of whether a bond qualifies as a statutory bond based upon the application of unambiguous statutory criteria. See WMS Const., Inc. v. Palm Springs Mile Assocs., Ltd., 762 So.2d 973, 975 (Fla. 3d DCA 2000) (question subcontractor must successfully resolve, or risk the loss of its compensation, is nature of bond). But even if substance does give way to form here, the courts have uniformly enforced the technical niceties of the *453 Construction Lien Law in a strict fashion without regard to considerations of equity or actual prejudice. See, e.g., W.W. Plastering, Inc. v. Chism Const. Inc., 867 So.2d 600, 602 (Fla. 1st DCA 2004) (lien law is a creature of statute and must be strictly construed); Zalay v. Ace Cabinets of Clearwater, Inc., 700 So.2d 15, 17 (Fla. 2d DCA 1997) (Florida construction lien laws must be strictly construed).
Under the holding of the majority, the surety may escape liability to a claimant under a payment bond for a risk that it clearly assumed. If this occurs, Appellant will not be paid for its labor and materials.[3] This result flies in the face of the fundamental purpose of the Construction Lien Law, which is to protect those who have provided labor and materials for the improvement of real property. WMS Const., Inc., 762 So.2d at 974-75. If that is where the chips fall when both claimant and surety are treated alike, then so be it. Here, however, the surety may unfairly escape liability by insisting that the claimant strictly comply with statutory notice provisions while at the same time successfully arguing that its strict compliance with the very same statute is excused. This result is simply not fair. I would reverse the lower court's determination that the bond was statutory.
I concur with the majority that the trial judge erred in dismissing count II with prejudice because the record does not conclusively establish that Appellant failed to satisfy statutory conditions precedent.
PLEUS, C.J., PALMER and ORFINGER, JJ., concur.
NOTES
[1] We note that, even if different notice requirements applied, an assumption undermined by the amendment, such a difference does not constitute "expanded coverage" sufficient to transform a statutory bond into a common law bond. See Nat'l Fire Ins. Co. of Hartford v. L.J. Clark Constr. Co., Inc., 579 So.2d 743, 745 (Fla. 4th DCA 1991).
[2] We applied a similar principle to fashion a remedy in a public construction bonding case, noting that "it would be unfair to insist on the timely performance by the claimant when such nonperformance was caused by the failure of the bond to be recorded." Fla. Crushed Stone Co. v. Am. Home Assurance Co., 815 So.2d 715, 717 (Fla. 5th DCA 2002) (emphasis added); see also Am. Home Assurance Co. v. Plaza Materials Corp., 908 So.2d 360, 367 (Fla.2005) (approving Florida Crushed Stone and overruling opinions holding that companies' technical noncompliance with section 255.05(6) prevented them asserting statutory notice and time requirements even if claimants were not prejudiced).
[1] I only advocate this position alternatively given the majority's determination that the bond is statutory and its disparate application of the "no prejudice" principle. If the bond is a common law bond, as I contend it is, then compliance with unambiguous notice provisions contained therein is required as a matter of contract law.
[2] Likewise, Bridgeport, Inc. v. Tampa Roofing Co., 903 So.2d 306 (Fla. 2d DCA 2005), does not support the view of the majority. There, the court held that the bond did comply with the requirements of the statute.
[3] Appellant recovered summary judgment against the contractor who is apparently judgment-proof.