76 So.3d 313 (2011)
STOCK BUILDING SUPPLY OF FLORIDA, INC., d/b/a K & A Lumber Company, Appellant,
v.
SOARES DA COSTA CONSTRUCTION SERVICES, LLC, and Westchester Fire Insurance Company, Appellees.
No. 3D10-928.
District Court of Appeal of Florida, Third District.
October 5, 2011.
Rehearing Denied January 3, 2012.
*314 Siegfried Rivera Lerner De La Torre & Sobel and Steven M. Siegfried and H. Terry McConnnell and Nicholas D. Siegfried, Coral Gables, for appellant.
Smith, Currie & Hancock and F. Alan Cummings and Christopher R. Conley, Tallahassee, for appellee Soares Da Costa Construction Services, LLC; Etcheverry Harrison and Guy W. Harrison and Edward Etcheverry, Ft. Lauderdale, for appellee Westchester Fire Insurance Company.
Before ROTHENBERG and LAGOA, JJ., and SCHWARTZ, Senior Judge.
LAGOA, J.
Stock Building Supply of Florida, Inc., d/b/a K & A Lumber Company ("K & A") appeals a final judgment in favor of defendants Soares Da Costa Construction Services, *315 LLC ("Soares Da Costa") and Westchester Fire Insurance Company ("Westchester Fire") following a nonjury trial. For the following reasons, we affirm.

I. FACTUAL AND PROCEDURAL HISTORY

On May 4, 2005, Soares Da Costa entered into a direct contract with Panterra Development ("Owner") to construct a mixed-use condominium located in Miami, Florida ("Project"). Soares Da Costa served as general contractor on the Project and it awarded the subcontract for construction of the building's structural shell to Contract Management Services, Inc. ("Contract Management"). At the time, Contract Management was a member of Soares Da Costa, and held a 40% ownership interest in the company. Contract Management entered into an agreement with K & A in July 2005 to purchase the rebar materials necessary to construct the building's structural shell. On August 15, 2005, the Owner recorded a Notice of Commencement pursuant to section 713.13, Florida Statutes (2004). The Notice acknowledged that no payment bond had been provided for the Project.
On August 22, 2005, K & A began delivering rebar materials to the Project under the order of Contract Management. K & A also delivered other miscellaneous building materials to the Project under a separate order made by Soares Da Costa. Subsequently, on September 12, 2005, K & A served Soares Da Costa with a Notice to Owner/Notice to Contractor pursuant to sections 713.06 and 713.23, Florida Statutes, stating that it was delivering rebar materials to the Project under an order given by Contract Management ("First Notice"). On that same day, K & A also served a joint Notice to Owner/Notice to Contractor on Soares Da Costa for the miscellaneous building materials it delivered to the Project under Soares Da Costa's order.
Due to the lack of funding, construction on the Project ceased from January 2006 through the end of March 2006. On January 26, 2006, K & A recorded two claims of lien, one for materials billed to Contract Management in the total amount of $174,782.84, and one for materials billed to Soares Da Costa in the total amount of $3,155.56. All liens on the Project, including K & A's liens, were satisfied by the Owner in March 2006. Accordingly, on March 23, 2006, K & A recorded a Satisfaction and Waiver and Release of Lien on Final Payment for each of its claims of lien.
On March 28, 2006, the Owner recorded both a Notice of Termination of the August 15, 2005 Notice of Commencement, pursuant to section 713.132, Florida Statutes (2005), and a new Notice of Commencement. The Notice of Termination included a statement by the Owner that all lienors had been paid in full. The new Notice of Commencement acknowledged that the Project now had a payment bond pursuant to section 713.23, and identified Westchester Fire as the surety providing the payment bond. A copy of the bond was also attached to the Notice of Commencement.
Under the order of Contract Management, K & A recommenced supplying rebar to the Project on April 24, 2006. It also furnished miscellaneous building materials to the Project under the order of Soares Da Costa. K & A served Soares Da Costa with a Notice to Owner/Notice to Contractor on May 10, 2006 ("Second Notice") that stated only that K & A was furnishing building materials to the Project under an order given by Soares Da Costa. Significantly, and unlike its previous action in September 2005, K & A did *316 not serve Soares Da Costa with a Notice to Owner/Notice to Contractor concerning the rebar materials it furnished to the Project under the order of Contract Management. Although Soares Da Costa paid Contract Management in full for all of the rebar material pursuant to their contract, Contract Management did not, in turn, pay K & A in full for the rebar materials it supplied to the Project. Consequently, K & A duly transmitted a Notice of Nonpayment to Soares Da Costa and Westchester Fire in accordance with section 713.23(1)(d), Florida Statutes (2005).
K & A subsequently filed suit against Contract Management, Soares Da Costa and Westchester Fire on the payment bond, asserting causes of action for breach of contract, open accounts, and accounts stated. Following the bench trial, the court found that K & A and Soares Da Costa were not in privity, and K & A therefore had to serve notice on Soares Da Costa pursuant to section 713.23(1)(c). The trial court held that K & A was not entitled to recover against Soares Da Costa or Westchester Fire because it failed to serve the proper notice, thus barring its claim against Soares Da Costa and Westchester Fire on the section 713.23 payment bond. However, the trial court concluded that K & A was entitled to recover on its claim against Contract Management in the full amount of $269,475.63, and entered final judgment accordingly. This appeal ensued.

II. STANDARD OF REVIEW

K & A does not challenge the trial court's factual findings but rather, the application of those facts to Florida's Construction Lien Law. Accordingly, the standard of review is de novo. See Kephart v. Hadi, 932 So.2d 1086, 1089 (Fla. 2006) ("The interpretation of a statute is a purely legal matter and therefore subject to the de novo standard of review."); B.Y. v. Dep't of Children and Families, 887 So.2d 1253, 1255 (Fla.2004) ("The standard of appellate review on issues involving the interpretation of statutes is de novo.").

III. ANALYSIS

K & A raises several issues on appeal, only one of which merits discussion: whether the Notices to Contractor sent by K & A were sufficient to satisfy the requirements of section 713.23.
K & A contends that the First Notice was sufficient to satisfy the requirements of section 713.23(1)(c) for all of the rebar materials it supplied and that the trial court erred in concluding that K & A should have served Soares Da Costa with a new Notice to Contractor for the rebar materials it supplied to the Project when the Project recommenced in April of 2006. Alternatively, K & A argues that the Second Notice was sufficient to satisfy the requirements of section 713.23(1)(c) for purposes of the rebar material supplied after the Project recommenced. We address each argument in turn.

A. First Notice

i. The First Notice Created a Lien Governed by Section 713.06, not Section 713.23.

Construction liens are purely creatures of statute and must be strictly construed. Aetna Cas. & Sur. Co. v. Buck, 594 So.2d 280, 281 (Fla.1992). Where a contractor does not have a statutory bond in place, section 713.06, Florida Statutes (2004), provides that a materialman, laborer or subcontractor who is not in privity with the owner may acquire a lien on the real property improved for any money that is owed to him or her for labor, services, or materials furnished in accordance with his or her contract and with the direct contract. See § 713.06(1), Fla. Stat. As a *317 prerequisite to perfecting a lien under section 713.06 and recording a claim of lien, all lienors must serve a notice on the owner setting forth the lienor's name and address, a description sufficient for identification of the real property, and the nature of the services or materials furnished or to be furnished. See § 713.06(2)(a), Fla. Stat. "The notice must be served before commencing, or not later than 45 days after commencing, to furnish his or her labor, services, or materials." Id.
Existence of a section 713.23 payment bond exempts the owner's real property from liens. Where a contractor has a payment bond, a lienor not in privity with a contractor must serve the contractor with notice in writing either before beginning, or within 45 days of beginning to furnish labor, materials, or supplies, that the lienor will look to the contractor's bond for protection on the work. § 713.23(1)(c), Fla. Stat. (2005)[1]. As a condition precedent to an action against a contractor or surety on a section 713.23 payment bond, all material suppliers who are not in privity with the contractor must serve such a notice on the contractor. See § 713.23(1)(e), Fla. Stat. (2005).
An owner must record a notice of commencement before initiating improvements to any real property, whether or not the project has a payment bond in compliance with section 713.23. See § 713.13(1)(a), Fla. Stat. (2005). A certified copy of the notice of commencement or a notarized statement that the notice of commencement has been filed for recording along with a copy thereof must also be posted on the job site. Id. The Second District has described the purposes served by a notice of commencement as follows:
Though the Notice of Commencement was originally required to trigger a commencement date from which to measure time limitations under the [Construction] Lien Law, the information contained in the Notice of Commencement provides all the details necessary to complete a Notice to Owner. Indeed, Section 713.13(1)(a), Florida Statutes, requires with Notice of Commencement information including the name and address of the owner and contractor. Thus, the legislature contemplated that the Notice of Commencement would provide the lienor with the current names and addresses of the owner and contractor, so that the lienor could properly mail the Notice to Owner.
Design Aluminum, Inc. v. DeSanti, 521 So.2d 285, 287 (Fla. 2d DCA 1988) (quoting Symons Corp. v. Tartan-Lavers Delray Beach, Inc., 456 So.2d 1254, 1259 (Fla. 4th DCA 1984)).
In addition, a notice of commencement serves to determine the priority of liens under the Construction Lien Law. See § 713.07, Fla. Stat. (2005). Liens arising under sections 713.05 and 713.06,[2] Florida Statutes, attach and take priority as of the date the notice of commencement is recorded. § 713.07(2), Fla. Stat. A notice of commencement may be terminated only after completion of construction, or if construction ceases before completion, after all lienors have been paid in full or pro rata in accordance with section 713.06(4), Florida Statutes. See § 713.132(1), (3), Fla. Stat. (2005). If a notice of termination of a notice of commencement is *318 recorded as a result of the cessation of construction, a new notice of commencement must be recorded before completion of the improvement may be recommenced. See § 713.13(1)(a), Fla. Stat. (2005).
In the instant case, the Project did not have a section 713.23 payment bond when it began in August 2005. A statutory payment bond only secures liens that accrue subsequent to its execution and delivery. See § 713.23(2), Fla. Stat. (2005). "As to those who seek payment for work done prior to the filing of [a statutory payment] bond, the bond does not exempt the project from the liens of such persons. The project, for those lienors, is essentially unbonded." Prof'l Plastering & Stucco, Inc. v. Bridgeport-Strasberg Joint Venture, 940 So.2d 444, 447 (Fla. 5th DCA 2006). Section 713.23(1)(c) was, therefore, inapplicable to the First Notice, and the First Notice could only serve to perfect K & A's lien against the Owner and Soares Da Costa pursuant to section 713.06(1), not to satisfy conditions precedent to recovery under a section 713.23 payment bond.

ii. K & A's Release of Its Lien Created by the First Notice

Furthermore, the lien perfected by K & A's First Notice was satisfied prior to the recommencement of the Project. After construction on the Project ceased, K & A recorded a claim of lien for the rebar materials it billed to Contract Management in the total amount of $174,782.84. This lien was satisfied by the Owner in March of 2006 and K & A executed a Satisfaction and Waiver and Release of Lien on Final Payment. The Waiver and Release of Lien executed by K & A was identical to the form provided in section 713.20(5), Florida Statutes (2005), for execution by lienors upon final payment of a lien. It stated in pertinent part:
The undersigned lienor, in consideration of the final payment in the amount of $174,782.84 hereby waives and releases its lien and right to claim a lien for labor, services, or materials furnished to CONTRACT MANAGEMENT SERVICES, INC., a Florida general partnership, on the job of PANTERRA DEVELOPMENTS, a Florida general partnership, to the following described property: City 24, 2347 N. Biscayne Boulevard, Miami, Florida.
(emphasis added). K & A's waiver and release finally and effectively disposed of K & A's existing lien rights.

iii. Notice of Termination

All other existing liens on the Project were disposed of by the Owner in a similar manner, and the Owner then recorded a Notice of Termination of the August 15, 2005 Notice of Commencement. The Notice of Termination acknowledged that all lienors had been paid in full and was recorded after construction on the Project had ceased before completion, thus satisfying the requirements of sections 713.132(1)(e) and (3). Moreover, it was necessary for the Owner to file a Notice of Termination in order to terminate the effectiveness of this Notice of Commencement, thus giving the lender a first lien on the property when it subsequently recorded the construction mortgage in connection with new financing of the Project. Accordingly, when the Owner recorded a new Notice of Commencement, the Project began anew, thereby renewing the notice requirements of the Construction Lien Law. As a result, K & A was required to send new notices under the Construction Lien Law in order to perfect its lien rights relating to materials K & A furnished after the Project recommenced.

*319 B. Second Notice

K & A also argues that the Second Notice was sufficient to satisfy the notice requirements of section 713.23(1)(c) for purposes of the rebar materials supplied after the Project recommenced. The trial court concluded that the Second Notice failed to provide the required notice because it stated that K & A was providing materials to the Project "under an order given by Soares Da Costa Construction." The trial court found that K & A furnished the rebar materials at issue to the Project under the order of Contract Management, not Soares Da Costa. It held that K & A was required to send a separate Notice to Contractor for the rebar materials it delivered to the Project under the order of Contract Management as it had done previously, in the First Notice.
Section 713.23(1)(c) sets forth a form for the notice to contractor which calls for the lienor to identify under whose order the lienor supplied the materials to the project.[3] "The purpose of the notice is to protect an owner from the possibility of paying over to his contractor sums which ought to go to a subcontractor who remains unpaid. The burden is on the subcontractor to insure that the owner knows of his Claim." Bishop v. James A. Knowles, Inc., 292 So.2d 415, 417 (Fla. 2d DCA 1974) (quoting Boux v. East Hillsborough Apartments, Inc., 218 So.2d 202 (Fla. 2d DCA 1969)). In Bishop, the Second District described the statutory intent behind the Construction Lien Law's notice requirements as follows:
The statutory intent appears clear. The notice is more than written advice that a particular subcontractor is working on the job. If this were the only purpose, there would be many instances where there would be no need for the notice to be served because owners often have knowledge of the identity of one or more of the subcontractors involved in the construction of their building. The notice of intent to claim a lien is a notification that pursuant to the statute the subcontractor is looking to the owner for payment.
Id. Actual notice that a materialman is providing materials to a project, therefore, is insufficient to satisfy the notice requirements of section 713.23(1)(c). A subcontractor is not excused from the notice requirement of section 713.23(1)(c) even where the owner, surety or contractor did not fully adhere to the requirements of chapter 713, Florida Statutes. See Prof'l Plastering & Stucco, 940 So.2d at 448 ("[E]ven if the Subcontractor is correct that the Owner, the Surety, and the Contractor did not fully adhere to the requirements of chapter 713, the Subcontractor [is] not excused from complying with the requirements of section 713.23 that it provide notice . . . ." (quoting Bridgeport, Inc. v. Tampa Roofing Co., 903 So.2d 306, 309 (Fla. 2d DCA 2005))).
Arsenio Nieves, K & A's Commercial Credit Manager, testified concerning the company's procedure for sending out notices in compliance with the Construction Lien Law. Mr. Nieves testified that every agreement K & A entered into with a customer to deliver materials to a job was *320 assigned a number in the company's system. When a new number was generated, the required statutory notices for that job were automatically requested. K & A employed Accurate Notice to send these notices. Additionally, when K & A filed a claim of lien on a job, the company's system permanently froze the account number assigned to that job.
Indeed, Mr. Nieves acknowledged that new numbers were assigned both to Soares Da Costa and Contract Management when the Project recommenced and K & A once again began delivering materials to the Project. Mr. Nieves also acknowledged that, customarily, when new numbers were assigned to a job, K & A would advise Accurate Notice to send out new notices in compliance with the Construction Lien Law. Mr. Nieves admitted that in the instant case a notice was sent only for the miscellaneous building materials K & A delivered under the order of Soares Da Costa, and a notice was not sent as to the rebar materials delivered by K & A to the Project under the order of Contract Management. Mr. Nieves could not explain why such a notice was not sent, stating only that K & A must have requested that a new notice pertaining to the Contract Management order be sent because a new number was generated. When asked if the failure to send the notice was a mistake on Accurate Notice's part, Mr. Nieves responded, "You're asking the wrong person. I'm not Accurate." Indeed, as the trial court found in the Final Judgment, "K & A Lumber could not explain the omission except that it was an oversight."
"Construction lien statutes must be given a strict reading." WMS Constr., Inc. v. N. Am. Specialty Ins. Co., 929 So.2d 1, 4 (Fla. 3d DCA 2005). K & A was not excused from complying with the requirements of section 713.23(1)(c). It admittedly failed to send a new Notice to Contractor as to its contract with Contract Management and it provided no justification or explanation at trial for why the Notice was not sent. As a result of K & A's failure to send the appropriate notice to Soares Da Costa concerning its contract with Contract Management, Soares Da Costa paid Contract Management for 100% of the Project rebar without obtaining full releases of lien from K & A to ensure that it was paid for the rebar materials it furnished to the Project. Thus, K & A's failure to send Soares Da Costa a new Notice to Contractor for its contract with Contract Management resulted in just that which the notice is designed to prevent: payment to Contract Management, which should have been made to K & A.
Moreover, the burden was on K & A to ensure that Soares Da Costa knew of its intention to look to the payment bond for protection on its work. Any actual notice Soares Da Costa may have had that K & A was delivering rebar materials to the Project was insufficient to satisfy this burden. Only privity of contract between the contractor and the lienor, or a lienor's notice to the contractor as prescribed by section 713.23(1)(c), Florida Statutes, may serve to meet this burden. K & A acknowledged that it did not send a new Notice to Contractor concerning its agreement with Contract Management after recommencement of the Project. Thus, it failed to satisfy a condition precedent to its claim on the payment bond and was precluded from making such claim.

IV. CONCLUSION

For the above reasons, we affirm the final judgment.
Affirmed.
ROTHENBERG, J., concurs.
*321 SCHWARTZ, Senior Judge (dissenting).
In my judgment
(a) no notice to contractor was even required in the circumstances under section 713.23(1)(c), because the lienor and the contractor, in every real sense, shared a "common identity" and were therefore in "privity" with each other. See Aetna Cas. And Sur. Co. v. Buck, 594 So.2d 280 (Fla.1992);
(b) assuming otherwise, both the "first" September 12, 2005 preliminary notice and
(c) the March 28, 2006, "second" notice, although it was not necessary, satisfied any such requirement.
With respect, I believe the Court's analysis to the contrary embodies a super technical approach to the statutory scheme and gives binding effect to the utterly immaterial variances from the ordinary which had no effect upon the substantial rights of the parties. The law of Florida does not permit such a result. See Sam Rodgers Props., Inc. v. Chmura, 61 So.3d 432, 438 (Fla. 2D DCA 2011) ("`[T]he omission of any of the [statutorily required details] or errors in such claim of lien shall not, within the discretion of the trial court, prevent the enforcement of such lien as against one who has not been adversely affected by such omission or error.' § 713.08(4)(a)."); see also Stunkel v. Gazebo Landscaping Design, 660 So.2d 623 (Fla.1995); WMS Const., Inc. v. Palm Springs Mile Assocs., Ltd., 762 So.2d 973 (Fla. 3d DCA 2000); Florida Wood Services, Inc. v. Osprey Joint Venture, 720 So.2d 591 (Fla. 5th DCA 1998); Centex-Winston Corporation v. Crown Paint, Inc., 294 So.2d 694 (Fla. 3d DCA 1974).
NOTES
[1] Section 713.23(1)(c) states in pertinent part:

Either before beginning or within 45 days after beginning to furnish labor, materials, or supplies, a lienor who is not in privity with the contractor, except a laborer, shall serve the contractor with notice in writing that the lienor will look to the contractor's bond for protection on the work.
[2] Sections 713.05 and 713.06 involve unbonded liens.
[3] Section 713.23(1)(c) states that the notice to contractor may be in substantially the following form:

NOTICE TO CONTRACTOR
To (name of contractor)
The undersigned notifies you that he or she has furnished or is furnishing (services or materials) for the improvement of the real property identified as (property description) owned by (owner's name and address) under an order given by ____ and that the undersigned will look to the contractor's bond for protection on the work.